THE PIEDMONT AND ARLINGTON LIFE INSURANCE CO. *v.* TRESY RAY ET AL.

1. JURISDICTION—PLEADING.—Where it appears from the face of the petition that the subject-matter of the suit is not within the jurisdiction of the District Court, the defect may be reached by general demurrer; but where the court has jurisdiction of the subject-matter, but defendant is entitled to be sued in some other county, the defendant must plead to the jurisdiction or specially except to the petition, or the objection is held as waived.

2. WAIVER — ANSWER TO THE MERITS. — The personal privilege of being sued in some other county is waived by answer to the merits.

3. EVIDENCE—PRACTICE.—Objections to the introduction of testimony not made in the court below, will not be heard in the appellate court.

4. PAYMENT BY DRAFT.—Payment of a premium on a life insurance policy by a draft received by the agent of the insurance company, and which draft was paid, was a valid payment, although the rules of the insurance company forbade agents taking drafts in payments.

5. ATTORNEY'S FEES IN SUITS AGAINST INSURANCE COMPANIES. — In a suit on a policy upon the death of the assured, prior to the act of the Legislature (Acts of 14th Leg., p. 200, sec. 9) allowing reasonable attorney's fees for the prosecution of cases against insurance companies, it was error to allow as part of damages attorney's fees to plaintiff.

6. RETROSPECTIVE LAWS.—Statutes are held to operate prospectively, unless a contrary construction is evidently required by their plain and unequivocal language.

7. CONSTRUCTION OF STATUTE.—"The several insurance companies, and those incorporated out of this State, in all cases where a loss occurs, and when they refuse to pay within the time specified in the policy, shall be liable to pay the holder of said policy, in addition to the loss, not more than twelve per cent. on the liability of said company for said loss; also all reasonable attorney's fees for the prosecution of the case against said company:" (Act of 14th Leg., p. 200.) *Held*, To apply to future losses.

8. SAME—CONSTITUTIONAL LAW.—Suggested that said act, applied to policies existing at the passage of the act, and even to future losses, would be violative of the obligation of the contract, and of the prohibition in the State Constitution against retrospective laws.

9. SUIT BY INFANTS. — In a suit by an infant by next friend, or otherwise than by regular guardian, if objection be made, a special guardian must be appointed, who must take the oath and give the prescribed bond ; and for want of such appointment a judgment will be reversed.

10. PARTIES.—An insurance policy payable to the widow of the assured, half for herself and half for use of her children, construed to be collectible at suit of widow. The children are not necessary parties.

11. PRACTICE IN SUPREME COURT.—For excess in recovery for attorney's fees, and in the judgment omitting to state that one-half the recovery was for use of the children of plaintiff, the court, on error, will reverse and reform.

ERROR from Rusk. Tried below before the Hon. R. S. Walker.

On the 14th of October, 1874, Tresy Ray, for herself and as next friend of her children, brought suit against the Piedmont and Arlington Life Insurance Company on a policy of insurance issued by it to G. A. Ray, the husband and father of plaintiffs, for $2,500 in gold, for the benefit of plaintiffs. On the 6th of November, 1874, defendant filed for answer general demurrer and special exceptions, general issue and special answer, in which it substantially states that plaintiff never complied with the terms of the policy, but failed to pay the first premium until G. A. Ray was *in extremis*, and then paid the premium fraudulently, concealing the condition of Ray from the company, and it tendered back the premium paid in court. On the 18th of January, 1877, defendant filed amended answer, pleading, to the jurisdiction of the court, that the court could not entertain the suit because the defendant did not reside in and had no agent in Rusk county, but was domiciled in Richmond, Va. In special plea, it alleged that G. A. Ray was never insured by defendant; that Ray made application for insurance, and the application was granted on condition that he would pay the first premium; that Ray refused to pay the premium; that the premium was never paid till Ray had died, and the defendant was ignorant of Ray's death when the premium was paid; alleging fraud, &c., and that defendant offered to return the premium as soon as it was ascertained that Ray had died.

On the 19th of January, 1877, plaintiff moved to strike out the plea to the jurisdiction of the court, because filed after plea to the merits of the petition, and because not filed in due order of pleading.

On the 19th of January, 1877, plaintiff filed amended petition, alleging that it is not true, as alleged by defendant in its answer, that G. A. Ray did not pay the first premium for the policy sued on; but averring that Ray had paid said premium before his death, and before the policy issued, by executing and delivering to Nash, the agent of defendant, his draft on Nat. Guerin for the premium, and said Guerin
33

accepted the draft and paid it; that said Nash accepted the draft in full satisfaction of said premium, and delivered to said Ray, long before Ray's death, the policy, which policy plaintiff filed as a part of her amended petition.

On the 5th of February, 1877, defendant filed general exception to the amended petition.

On the 5th of February, 1877, defendant filed amended answer, in substance what it had previously stated, and in addition that Nash had no authority to accept the draft from Ray in payment of the premium, and that Ray refused to pay the draft,—caused it to be protested, &c.

Defendant's plea to the jurisdiction of the court was stricken out. Judgment was rendered for the plaintiff for $3,515.38 and costs. Motion for new trial and in arrest of judgment were made and overruled. Defendant brings this case into this court by writ of error.

Additional facts necessary are given in the opinion.

*Drury Field,* for plaintiff in error.

I. The court erred in overruling defendant's general demurrer to plaintiff's petition, the petition disclosing the fact that the court had no jurisdiction to try the cause. (Paschal's Dig., art. 1423.)

II. There is error in the ruling of the court in striking out defendant's plea to the jurisdiction of the court. The plea presented to the court the fact of lack of jurisdiction, and was good, it mattered not when filed.

III. There was error in the court admitting the policy issued to Gabriel Ray over the objection of defendant, the ground of objection being, that plaintiff did not prove by the production of the special act of incorporation that there was any such company incorporated in the State of Virginia as the Piedmont and Arlington Life Insurance Company. (1 Greenl. on Ev., sec. 480 ; Watkins *v.* Holman, 14 Curtis, 175.)

IV. The evidence showed that Gabriel Ray had abandoned his application for the policy of insurance before it was issued

by the company, and refused to accept it when tendered to him by the company after it was granted.

V. The court erred in giving judgment against plaintiff in error, because the evidence showed that Gabriel Ray did not pay the first premium on his policy before his death, and caused the draft he had drawn on Guerin for its payment to be dishonored and not paid. The premium remained unpaid until three days after the death of Gabriel Ray, when the same was paid by Nat. Guerin, knowing that Ray was dead and could not be insured, at the same time concealing the fact of Ray's death from the company, thereby inducing the company to accept the premium for a dead man, after his death, which was a fraud on the company. (Hoyt *v.* Mutual Benefit Life Insurance Co., 98 Mass., 539; Myers *v.* Keystone Mutual Life Insurance Co., 27 Penn., 268; Sheldon *v.* Conn. Mutual Life Assurance Co., 25 Conn., 207; Robert *v.* New England Mutual Life Insurance Co., 1 Big. on Ins., 634.)

VI. Ray, the insured, refused to allow the first premium to be paid before his death, and refused to receive the policy when tendered to him; hence the risk against the company never attached, by reason of Ray's own default in payment of his first premium, which was a condition precedent to the attaching of the risk against plaintiff in error.

VII. Gabriel Ray abandoned his application to be insured before it was granted, and when the same was presented to him he positively refused to accept it; notified Guerin not to pay the draft that he had drawn upon him, and that Guerin had accepted for Ray, in favor of the company, to pay the first premium.

VIII. There is error in the judgment of the court awarding ten per cent. attorney's fees to plaintiff in the suit. The statute of this State under which, we suppose, the court awarded attorney's fees, was passed long subsequent to the accrual of the plaintiff's alleged cause of action, and the court, in applying said act to this cause, gave the act retro-

active effect.    (Gen. Laws of 1874, approved May 2, 1874, sec. 9, p. 200.)

IX. The court erred in giving judgment for plaintiff below, for any sum, because the evidence shows that the pretended insured was dead before the risk attached, under the rules governing the issuance of policies.

*N. G. Bagley, Jones & Wynne,* and *William Steadman,* for the defendant in error.

I. It is competent for a court to render judgment in favor of a resident against a non-resident, upon service had upon the resident agent. (Paschal's Dig., art. 1423.)

II. The petition alleges that defendant is a non-resident; that D. M. W. Nash is its agent, with an office at Galveston, Texas. Nash waived service and submitted to the jurisdiction of the court. (Act Legislature of Texas 1874, sec. 1, pp. 197, 198.)

III. When a party has appeared and answered to the merits he submits to the jurisdiction, and it is too late to plead to the jurisdiction.

Plaintiff had answered to the merits before he plead to the jurisdiction. (25 Tex. Supp., 77; 23 Tex., 178; 20 Tex., 215; 11 Wall., 668.)

IV. The third error assigned cannot be considered, when we refer to the bill of exceptions and see there the only objection to the reading of the policy was that it was not authenticated as the law required to admit it in evidence. The policy was sealed with the corporate seal. We submit that the question raised in the third assignment was not raised in the court below, and will not be considered by this court.

If the policy was under seal of the company and a part of the petition, and sued on as the contract of the plaintiff, and its execution was not denied, but admitted, its admission as evidence was proper. (Herndon *v.* Ennis, 18 Tex., 411; Bliss on Life Ins., sec. 161, p. 248.)

We insist that the contract was executed and complete

when the draft on Guerin was given by Ray, and had been accepted by Guerin, and taken by Nash as payment of the premium, and the policy issued and was delivered; and that Ray could not abandon it without the consent of Nash or the plaintiff, and the plaintiff nor its agent Nash would release Ray. (Bliss on Life Ins., 2d ed., secs. 150, 175, pp. 215, 268.)

V. As to allowing attorney's fees, we insist that the Legislature of Texas has a right to enact laws that affect the remedy, and not questions upon the merits.

Ray departed this life in February, 1873; proof of death was made April 23, 1873, and this suit was brought October 14, 1874. (Act of Legislature of Texas approved May 2, 1874, sec. 9, p. 200; Freeborn *v.* Smith, 2 Wall., 174, 175; Bronson *v.* Kinzie, 1 How., 315, 316.)

VI. We say that the contract was complete when Nash accepted the draft from Ray. He accepted it as cash, and his act was recognized by the company; and whatever the rules on the back of the policy may be, which Ray never saw till the policy was delivered, which was long after the contract was made, they cannot affect the contract made under the circumstances established by the evidence in this case. (Bliss on Life Ins., 2d ed., sec. 179, p. 275, and first note on same page.)

MOORE, CHIEF JUSTICE.—If it appears on the face of the petition that the subject-matter of the suit is not within the jurisdiction of the District Court, the defect in the petition may be taken advantage of by general demurrer. But when the objection to jurisdiction is not for want of power in the court to hear and determine the subject-matter of the suit, but want of proper service because defendant is entitled to be sued in some other county, unless the defendant pleads to the jurisdiction of the court, or specially excepts to the petition, the objection is waived.

2. If the objection to the jurisdiction is because of the priv-

ilege of defendant of being sued in some other court than that in which the action is brought, or because there has been no sufficient service to require defendant to answer, it is a familiar principle that an answer to the merits gives jurisdiction of the person, and is a waiver of the privilege of being sued elsewhere.

3. The third error assigned by appellant is, that the policy upon which the suit was brought should not have been admitted in evidence, because plaintiff did not prove that there was any such company incorporated in the State of Virginia as the Piedmont and Arlington Life Insurance Company, by producing the special act of incorporation passed by the Legislature of said State, if any such act ever existed. In answer to this assignment, it is sufficient to say that it is not warranted by the record. No such objection was made to the introduction in evidence of the policy as that suggested in the assignment. The only objection taken to the introduction of the policy, or at least the only one shown by the record, is that said policy " was not authenticated as required by law to admit the same in evidence." As the point ruled by the court has not been assigned as error or discussed by counsel, we need not notice it.

4. The fourth, fifth, sixth, and seventh assignments relate to issues of fact raised by appellant's answer denying the execution of the contract of assurance set up in plaintiff's petition. We see nothing in the record, in respect to any of the matters referred to in these assignments, of which appellant can complain, or which would warrant a reversal of the judgment. Concede that appellant forbade its agents to accept drafts or bills in payment of premiums for their policies: the want of authority of the agent to receive payment in this way, might be waived and such payment acquiesced in and accepted by the company. There was, unquestionably, evidence tending to prove that such was the fact in respect to this policy. If so, the payment was just as valid and effectual as if it had been made in cash.

8. The eighth assignment is, in our opinion, well taken.
The judgment in appellee's favor for the sum of $319.58 as
reasonable attorney's fees, is unwarranted and cannot be sus-
tained.    The loss on account of which this suit was brought,
had occurred long before the enactment of the law allowing
a recovery of reasonable attorney's fees in suits against life
insurance companies incorporated out of this State.    It is a
well-settled rule that statutes are always held to operate pro-
spectively, unless a contrary construction is evidently requir-
ed by their plain and unequivocal language.    The law relied
upon to support this judgment reads as follows: "The sev-
eral insurance companies, and those incorporated out of this
State, in all cases where a loss occurs, and when they refuse
to pay within the time specified in the policy, shall be liable
to pay the holder of said policy, in addition to the loss, not
more than twelve per cent. on the liability of said company
for said loss; also all reasonable attorney's fees for the pros-
ecution of the case against said company."    Certainly the
language here used seems much more appropriately to apply
to losses to occur after the passage of the law, than to such as
had previously occurred, though they were still unpaid; but
if it plainly appears that the Legislature intended it to apply
to all cases, without reference to the date of loss, we should
feel constrained to hold that effect could not be given to this
intention in this case.    To do so would, in our opinion, vio-
late the obligation of the contract, and also be in direct con-
flict with the provision of our State Constitution prohibiting
the enactment of retrospective laws.    Whether like constitu-
tional objections will prevent a judgment for attorney's fees
where the loss occurs after the enactment of the law, on a
policy issued prior thereto, we are not now called upon to de-
termine.

9. If the minor plaintiffs were necessary parties to this
suit, the judgment would have to be reversed.    In earlier
times there seems to have prevailed rather technical and
subtle distinctions in courts of law, as well as of equity, in

respect to the prosecuting and defending of suits and actions by infants.    At law, an infant having a guardian might sue by his guardian or next friend, though in practice it is said he generally sues by his next friend, but in all cases he must defend by his guardian. (1 Black., 464; 2 Inst., 261; 2 Saund., 117*f*.) In equity, the practice seems to be for infants in all cases to sue by their next friend, although they have a guardian, but they may defend by their guardian. (Danl. Ch. Pr., 94, and notes; Story's Eq. Pl., sec. 58, and note 3.) While the authority of his next friend to sue for an infant is said to be derived from statutes passed in the time of Edward I, (Story's Eq. Pl., sec. 58, note 3,) they were certainly permitted to sue in this way in this State previous to the enactment of the probate law of 1870, and possibly since, though there is no statute expressly authorizing it, unless this is impliedly done by the authority given the court to appoint special guardians *ad litem* for infant parties.    After all, it seems of little moment whether the party by whom the infant sues is called by the one name or the other, if the authority to represent the infant is recognized by the court; for it is said on high authority that guardians and *prochein amy* are sometimes named in the books one for the other.    (Id.)    But though the name by which the representative of the infant may be designated may not be very material, before he can bind the infant, or before judgment should be rendered in his favor, if objection be made, he must, we think, take the oath and give the bond required of special guardians by the statute; and for this reason, if in this case the infants were necessary parties, the judgment would have to be reversed and the cause remanded.

By the terms of the policy the whole amount of loss is payable to Mrs. Ray, one-half in her own right and the other half in trust for the children of herself and her deceased husband.    The policy, by its terms, is "for the sole use of his (Gabriel A. Ray's) wife Treasy Ray and his surviving children, wife to become guardian without giving bond or secu-

rity." Certainly this clause in the policy does not make Mrs. Ray the guardian; but it plainly shows, as we think, the intention of the parties to the contract, that the entire amount for which the policy calls, was to be paid to her. The object and purpose of the stipulation, so far as concerns appellant, were that it might be authorized to settle the loss at once with Mrs. Ray, and not be embarrassed in doing so by reason of the interest of the children, for whom no guardian might have been appointed. If the assured chose to insure his life for the benefit of his children, coupled with the condition that the policy should be payable to their mother in trust for them, he certainly had the right to do so. The judgment, in our opinion, in effect accomplishes the purpose of the policy.

The mere technical difference in her recovery as the next friend of her minor children, instead of in trust for them, is not of such moment as to require a remand of the case. But for the error of the court in allowing attorney's fees, the judgment must be reversed and reformed. And it is so ordered.

REVERSED AND REFORMED.