GOVERNMENT PERSONNEL MUTUAL LIFE INSURANCE
COMPANY V. GORDON WEAR.

No. A-3617. Decided October 1, 1952.
Rehearing overruled October 29, 1952.
(251 S. W., 2d Series, 525.)

*Hubert W. Green* and *Frank M. Rosson,* both of San Antonio, for petitioner, Insurance company.

The Court of Civil Appeals erred in affirming that part of the judgment of the trial court which allowed the fee of $5,-000.00 for plaintiff's attorney, as such claim was made under an amended statute, which, if applied, would made the law retroactive. Piedmont and Arlington Life Ins. Co. v. Ray, 50 Texas 511. Miller & Miller v Gilliland, 232 S. W. 2d 886, error dismissed; State v. Humble Oil & Refg. Co., 141 Texas 40, 169 S.W. 2d 707.

*Wier & Wier, Trueheart, McMillan & Russell* and *C. W. Trueheart,* all of San Antonio, for respondent.

It is the province of the jury to determine a reasonable attorney's fee. Gulf Paving Co. v. Lofstedt, 144 Texas 17, 188 S.W. 2d 155; Cobb v. Harrington, 144 Texas 360, 190 S.W. 2d 709.

MR. JUSTICE SHARP delivered the opinion of the Court.

Gordon Wear filed this suit against the Government Personnel Mutual Life Insurance Company to recover "override" commissions on certain insurance and for attorney's fees. Wear's claim was based upon three contracts. The case was submitted to the jury upon special issues, and many of the issues were answered favorably to the Insurance Company. Notwithstanding such favorable answers, the trial court disregarded same and entered judgment for Wear for the sum of $68,630.79 and the further sum of $5,000 as attorney's fees. The Court of Civil Appeals held that Wear's right to recover "override" commissions on certain insurance was terminated on the date when the contract on which the "override" commissions were based was terminated. The Court of Civil Appeals, by a divided court, reformed the judgment of the trial court in the following respects:

"Appellant tendered the sum of $942 to appellee as being due him under his override contract, and the judgment will be amended so as to eliminate the recovery of $68,630.79, and in

place thereof provide for a recovery of $980.40, together with interest at the rate of 6% per annum from January 1, 1948, until paid.

"Paragraph (6) of the judgment will be amended so as to hereafter read as follows:

"(6) That, in addition, defendant Government Personnel Mutual Life Insurance Company, either now owes or else will owe plaintiff, Gordon Wear, two and one-half (2½%) percent commission on renewal premiums paid or that may later be paid, on each and every twenty-year endowment and twenty-payment life insurance policy, application for which was originally procured by C. H. Earl prior to January 1, 1948, that has been or is later renewed within ten years of its original issuance, if, as and when the premiums have been paid thereon to defendant since December 31, 1949, or are hereafter paid thereon to defendant in the future."

Mr. Justice Pope in his opinion states his views as follows:

"I would reform the judgment and award Wear a judgment for $4,703.28, together with attorney's fees and interest, and award him commissions on those renewals allowed by the majority but would allow them up to June 28, 1948, instead of January 1, 1948."

The judgment of the trial court by a majority of the Court of Civil Appeals was reformed as to the amount of recovery for commissions, as stated above, but the judgment of the trial court was affirmed as to attorney's fees. 247 S. W. 2d 284.

This suit involves the construction of three contracts. Gordon Wear, formerly an agent for the Insurance Company, sued the Insurance Company on November 18, 1951, upon a written contract of July 1, 1946, styled "Supplemental Agreement," and referred to by the court below as "Contract No. 2." This agreement provided that Wear was to receive "override" commissions on life insurance policies solicited by Earl under his respective agent's contract of July 1, 1946, with the Insurance Company, referred to by the court below as "Contract No. 3." The "Supplemental Agreement" contained no provision for cancellation, but was appended to the agent's contract of Wear executed on the same day, and which provided for its termination on thirty days' written notice by either party. This is referred to by the court below as "Contract No. 1." Alleging that he was also entitled to receive an "override" on insurance sold by Earl's

subagents, and that thirty days' written notice was required for termination of the "Supplemental Agreement" as well as for his agent's contract, Wear sued to recover "override" commissions on insurance sold by Earl and his subagents from January 1, 1948, when the Insurance Company ceased paying such commissions, to June 28, 1948, being thirty days after Wear had received written notice of termination of his agent's contract. Wear prevailed in the trial court on these two theories. However, the Court of Civil Appeals unanimously held that he was not entitled to an "override" upon insurance sold by Earl's subagents, and, by a divided court, held that the "Supplemental Agreement" was effectively terminated as of January 1, 1948, by oral notice given Wear in October, 1947.

The following Special Issues were submitted to the jury, and they were answered as set out below:

"Question No. 1: Do you find from a preponderance of the evidence that when Peter J. Hennessey in October or November, 1947, orally notified plaintiff, Wear, that the contract of July 1, 1946, between plaintiff and defendant, insofar as it related to overriding commissions, would be cancelled by the defendant effective on January 1, 1948, that plaintiff, Wear, waived the thirty days' written notice of cancellation as provided for in said contract?

"We, the jury, answer: 'Yes.'

"Question No. 2: Do you find from a preponderance of the evidence that in the month of October, 1947, plaintiff and defendant, by mutual agreement between them, cancelled, effective January 1, 1948, the Supplemental Contract dated July 1, 1946?

"We, the jury, answer: 'No.'

"Question No. 3: Do you find from a preponderance of the evidence that on the occasion when such oral notice of cancellation was given, plaintiff, Wear, knew that defendant intended to increase the commissions of C. H. Earl and other agents effective January 1, 1948, in reliance, if he did rely, upon the cancellation, if any, of the contract of July 1, 1946, between plaintiff and defendant?

"We, the jury, answer: 'Yes.'

"Question No. 4: Do you find from a preponderance of the evidence that defendant thereafter did increase the commissions of C. H. Earl and other agents, effective January 1, 1948, in the belief that the contract of July 1, 1946, between plaintiff and defendant had been cancelled?

"We, the jury, answer: 'Yes.'

"Question No. 5: Do you find from a preponderance of the

evidence that but for the belief, if any, by defendant that the Supplemental Agreement in question had been properly cancelled by oral notice, said defendant would not have increased the commissions to said Earl and other Agents?

"We, the jury, answer: 'Yes.'

"Question No. 6: Do you find from a preponderance of the evidence that defendant acted in good faith toward plaintiff, Wear, in the cancellation effective December 31, 1947, of C. H. Earl's contract of July 1, 1946, if there was such cancellation?

"We, the jury, answer: 'Yes.'

"Question No. 7: Do you find from a preponderance of the evidence that the plaintiff, Wear, had knowledge that defendant did not intend to pay him after December 31, 1947, override commissions under the Supplemental Contract?

"We, the jury, answer: 'Yes.'

"Question No. 8: When do you find from a preponderance of the evidence the plaintiff, Wear, had knowledge that the defendant Company did not intend to pay him after December 31, 1947, override commissions under the supplemental contract?

"We, the jury, answer: 'Oct., 1947.'

"Question No. 9: What amount of money do you find from a preponderance of the evidence would, if paid now in cash, fairly and reasonably compensate the attorneys of Gordon Wear for legal services rendered plaintiff in connection with the matters in controversy in this suit?

"We, the jury, answer: '$5,000.00.' "

Two controlling questions are presented here: (1) Was the contract under which Wear claims his "override" commissions terminated on December 31, 1947; and (2), does Article 2226, as amended, Vernon's Annotated Civil Statutes, operate retrospectively so as to authorize the recovery by Wear of $5,000 attorney's fees?

1 The majority opinion of the Court of Civil Appeals held that the evidence raised an issue of fact as to whether the Insurance Company intended to cancel the contract on December 31, 1947, and we think the findings of the jury upon this issue and the holding of the Court of Civil Appeals are sustained by the evidence; and no sound reason is presented here why such findings should be disturbed by this Court.

2 This brings us to a consideration of the recovery by Wear of $5,000 as attorney's fees. Petitioner Insurance Company contends that the allowance of the attorney's fees was error, on the grounds that: (1) the Court of Civil Appeals retroactively

applied Article 2226 as amended; and (2), Wear's claim was not based on "personal services rendered" within the meaning of the statute. Since the matter will be disposed of on the first ground, there is no need to consider the second. In upholding the allowance of attorney's fees, Chief Justice Murray reasoned that Article 2226, as amended, "does not require that the claim must have accrued subsequent to the effective date of the amendment," and that the claim on which Wear relies was brought within the provisions of the amended statute since it was presented and refused on November 15, 1949, after the effective date of the amendment. That court held that the criterion for the application of the amendment was the date on which the claim was presented and refused, rather than the date on which the cause of action arose, which in this case was well before June 29, 1949.

The pertinent parts of Article 2226, as amended, read as follows:

"Any person having a valid claim against a person or corporation for personal services rendered, labor done, material furnished, overcharges on freight or express, lost or damaged freight or express or stock killed or injured, may present the same to such person or corporation or to any duly authorized agent thereof; and if at the expiration of thirty (30) days thereafter, the claim has not been paid or satisfied, and he should finally obtain judgment for any amount thereof as presented for payment to such person or corporation, he may also recover, in addition to his claim and costs, a reasonable amount as attorney's fees, if represented by an attorney.

"Sec. 2. The fact that it is practically impossible to obtain legal services for the purpose of collecting claims described in this Act under the present law creates an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days in each House be and the same is hereby suspended, and that this Act shall take effect and be in force from and after its passage, and it is so enacted."

The foregoing Act became effective June 29, 1949.

The original Article, which was amended in 1949, (Ch. 494) and is now known as Article 2226, described the method of enforcing a claim, and further provided: "and if he shall finally establish his claim, and obtain judgment for the full amount thereof, as presented for payment to such person or corporation

in such court, he shall be entitled to recover the amount of such claim and all costs of suit, and, in addition thereto, a reasonable amount as attorney's fees; provided he has an attorney employed in the case, not to exceed twenty dollars, to be determined by the court or jury trying the same."

Prior to the amendment of Article 2226, in order to authorize the recovery of attorney's fees it was required that the full amount of the claim be recovered. The amendment substituted "any amount" for "full amount," and the provision limiting the amount of attorney's fees "not to exceed twenty dollars" was repealed. The amended Act now provides that, "in addition to his claim and costs, a reasonable amount as attorney's fees, if represented by an attorney."

The jury found that the contracts under which Wear asserts his claim against the Insurance Company terminated on December 31, 1947. At that time Article 2226, under which he asserts his right of recovery for attorney's fees, had not been amended, and therefore his right to recover attorney's fees is governed by the unamended Article, which limited a recovery of attorney's fees to "twenty dollars." To sustain a recovery of the $5,000 attorney's fees, as asserted in this case, the law would have to be construed to operate retrospectively. To give it that construction would violate Section 16 of Article I of the Constitution, and give to the law an intent not expressed therein. If the Legislature had intended for this Article to operate retrospectively, that intention could have been expressed in plain and specific language. This the Legislature did not do. It is the duty of courts to construe a law as written, and, if possible, ascertain its intention from the language used therein, and not look for extraneous reasons to be used as a basis for reading into a law an intention not expressed nor intended to be expressed therein.

The construction of Article 2226 was involved in the case of U. S. Life Insurance Co. v. Hamilton, Tex. Civ. App., 238 S. W. 2d 289, Refused NRE, and in the opinion, written by Mr. Justice Hale, in discussing Article 2226, it was said:

"Since this article is penal in nature, like other similar statutory provisions authorizing the recovery of attorney's fees in derogation of the common law, it should be strictly construed and applied. Washington Fid. Nat. Ins. Co. v. Williams, Tex. Com. App., 49 S. W 2d 1093, pt. 3, and authorities."

Section 16 of Article I of the Constitution of Texas provides: "No * * * retroactive law, or any law impairing the obligation of contracts, shall be made."

As early as 1878 this Court, in the case of The Piedmont and Arlington Life Insurance Co. v. Tresy Ray et al., 50 Texas 511, expressed the rule prevailing in this State as to whether laws will be construed to act retrospectively or prospectively, in the following language:

"The judgment in appellee's favor for the sum of $319.58 as reasonable attorney's fees, is unwarranted and cannot be sustained. The loss on account of which this suit was brought, had occurred long before the enactment of the law allowing a recovery of reasonable attorney's fees in suits against life insurance companies incorporated out of this State. It is a well-settled rule that statutes are always held to operate prospectively, unless a contrary construction is evidently required by their plain and unequivocal language."

The courts of this State in many cases have construed the foregoing provision of the Constitution, and in 39 Tex. Jur., p. 54, § 27, the rule prevailing in this State is stated as follows:

"But apart from any constitutional impediment, retrospective laws are commonly regarded with disfavor. A statute will not be applied or construed retrospectively or given retrospective operation, so as to affect existing rights or create new obligations and impose new duties as to past transactions, unless it clearly appears, from its terms or at least by fair implication, that the Legislature so intended. On the contrary, a statute is generally held to operate prospectively unless a contrary construction is required by the terms or the nature and object of the law." See also Tex. Jur., Ten Year Supp., 1937-1947, p. 796, § 27.

There is no language used in this Article indicating that it was the intention of the Legislature that such Article should operate restrospectively. If an Act is intended to operate retrospectively ,that intention must be clearly and unmistakably shown in the language of the Act, and it will not ordinarily be inferred. Had the Legislature intended that the amended Act should apply to claims presented and refused after the effective date of the amendment, regardless of when the cause of action arose, it could have plainly said so. If there is any doubt about the intention to have an Act operate retrospectively, the intention will be resolved against the retrospective operation of such

Act. This rule is recognized and enforced generally. See Miller & Miller Motor Freight Lines v. Gilliland, Tex. Civ. App., 232 S. W. 2d 886, writ dismissed; Zweig v. Bethlehem Supply Co., 186 Fed. 2d 20.

In 50 Amer. Jur., p. 494, § 478, the rule is stated as follows:

"The question whether a statute operates retrospectively, or prospectively only, is one of legislative intent. In determining such intent, the courts have evolved a strict rule of construction against the retrospective operation, and indulge in the presumption that the legislature intended statutes, or amendments thereof, enacted by it to operate prospectively only, and not retroactively." See also 59 C. J., Statutes, page 1181, section 719.

The trial court erred in rendering judgment for Wear for the sum of $68,630.79 and the further sum of $5,000 attorney's fees. The judgment for $68,630.79 was correctly reformed by a majority of the Court of Civil Appeals, and judgment for Wear upon that item was entered as above indicated; but the Court of Civil Appeals erred in affirming the judgment of the trial court regarding the $5,000 attorney's fees.

The judgment of the majority of the Court of Civil Appeals reforming the judgment of the trial court and entering judgment in favor of Wear for the commissions as above indicated is affirmed; but the judgments of the trial court and the Court of Civil Appeals, allowing a recovery of $5,000 attorney's fees, are reversed, and judgment is here rendered that respondent take nothing as to that item.

Opinion delivered October 1, 1952.

Rehearing Overruled October 29, 1952.