Richard SALAS, Appellant,

v.

The STATE of Texas, Appellee.

No. 13152.

Court of Civil Appeals of Texas,
Austin.

Dec. 12, 1979.

Michael J. Churgin, Austin, for appellant.

James L. McMurtry, County Atty., Barry
Gay, Asst. County Atty., Austin, for appellee.

PHILLIPS, Chief Justice.

This is an appeal from a temporary hospitalization commitment of the appellant, Richard Salas, pursuant to the Mental

Health Code. Tex.Rev.Civ.Stat.Ann. arts. 5547–31 to 5547–39d.

Appellant is before this Court on three points of error, which are, in summary, that: the trial court lacked jurisdiction to commit the appellant; the court erred in admitting the testimony of appellant's treating physician; and that the court erred in concluding that the State had proved by clear and convincing evidence that the appellant required hospitalization. We disagree with point of error number two, we reverse the judgment and remand the cause, and need not consider point of error number three.

There are two principal questions to be decided, both of which are significant to the commitment procedures of alleged mentally ill persons. The questions to be decided are: first, whether Art. 5547–80, setting forth the methods to discharge patients from mental hospitals, provides the exclusive methods to discharge voluntary patients, and second, whether House Bill 1163 (Vernon's Ann.Civ.Stat. art. 5561h), providing that communications between a patient and a professional are confidential, applies to mental health commitments.

This controversy originated on August 29, 1979, on which date appellant signed a voluntary agreement to become a patient at the Austin State Hospital. Subsequent to the voluntary admission, appellant absented himself without authorization from the hospital. On September 24, 1979, the State filed an "Application for Temporary Hospitalization," stating that the appellant was mentally ill, and that for the appellant's own welfare and protection, or the protection of others, observation and/or treatment in a mental hospital was required. Appellant filed a "Motion to Dismiss for Want of Jurisdiction," alleging that he had never been validly discharged from the hospital, and that the trial court did not have jurisdiction to commit him. The trial court denied this motion. The court, over appellant's objection, heard the medical evidence and found that the appellant was mentally ill and rendered judgment from an involuntary commitment of appellant to a mental hospital for a period not to exceed ninety days.

We hold that the trial court was correct in overruling the motion to dismiss, but was in error in admitting the psychiatric evidence over appellant's objection. We reverse the judgment and remand the cause.

I.

Appellant alleges that the trial court erred in denying his motion to dismiss for lack of jurisdiction on the grounds that he was never validly discharged from his voluntary status, and that the Mental Health Code does not provide for the commitment of voluntary patients.

Article 5547–26 provides that, "No Application for Temporary Hospitalization or Petition for Indefinite Commitment may be filed for the commitment of a voluntary patient to a mental hospital unless a request for his release has been filed with the head of the hospital." Article 5547–80 provides for the discharge of patients from mental hospitals. Appellant argues that he was never validly discharged from the State Hospital, as neither of the two relevant sections of Art. 5547–80 were followed. Section 80(a) states that, "The head of a mental hospital may at any time discharge a patient if he determines after examination that the patient no longer requires hospitalization." There is no dispute that such a determination was ever made, or even could have been made during appellant's absence. Section 80(d) states that, "The head of a mental hospital may discharge a resident patient who has been absent without authority for a continuous period of eighteen (18) months." Appellant was absent for only one day, which of course does not equal the statutory minimum stated above.

Appellant urges that since neither of these two procedures were followed, he was never validly discharged from the State Hospital. He then points to Art. 5547–26, asserting that since he was never discharged from his voluntary status, the State could not validly file for commitment, and consequently, that the trial court

lacked jurisdiction to render a judgment committing him.

The State argues in response that the statutory procedures for discharge are inadequate to meet the situation of a voluntary patient who leaves without permission, and urges us to hold that the discharge procedures of Art. 5547–80 are not the exclusive means to discharge voluntary patients.

The State further argues that under the Mental Health Code, it is unable to regain custody of absent voluntary patients. Article 5547–72 provides for the return of patients absent without consent:

"(a) The head of a mental hospital shall initiate action to regain custody of any patient who is absent without authority.

(b) It is the duty of any health or peace officer to take into protective custody and detain any such patient  . ."

Although no court has interpreted Art. 5547–72 in its application to absent voluntary patients, Tex. Att'y Gen.Op. No. M–432 (1969), determined that this statute does not apply to voluntary patients. The Attorney General based his opinion on Article I, Section 19, of the Texas Constitution, which provides that, "No citizen of this State shall be deprived of life, liberty, property . . . except by the due course of the law of the land." The Attorney General concludes that a voluntary patient has had no access to a court of law, and that until a person has been *committed* in accordance with the Mental Health Code, he is a free person, and not subject to the detention provisions of Art. 5547–72.

Pursuant to the Attorney General's opinion, the Austin State Hospital adopted a procedure whereby an unauthorized absence by a voluntary patient is treated as a request for release. By this procedure, the hospital discharges the patient and ends the voluntary status, allowing the hospital to regain custody of the patient if hospitalization is required by filing an application for temporary or indefinite hospitalization.

The State's position, in summary, is that a literal reading of the pertinent sections of the Mental Health Code would create a situation where the State could not regain custody of absent voluntary patients because of due process limitations, and would be unable to commit such patients due to the very limited patient discharge statute. The State maintains that if this were the exclusive system, a voluntary patient could leave without authority, remain absent for several months, return to the hospital, and then leave again. During such a sequence of events, the hospital could neither discharge nor regain custody of the patient.

The rule is that in construing a statute and its subject matter, reason and effect must be looked to and when a literal enforcement would lead to consequences which the Legislature could not have contemplated, the courts are bound to presume that such consequences were not intended and adopt a construction which will promote the purpose for which the legislation was passed. *Newsom v. State*, 372 S.W.2d 681 (Tex.Cr.App.1963); *Duval Corporation v. Sadler*, 407 S.W.2d 493 (Tex.1966). A statute should be given a fair and sensible construction in order to carry out the purpose for which it was enacted and should not be construed in such a manner as to nullify or defeat its purpose. *Lopez v. Ramirez*, 558 S.W.2d 954 (Tex.Civ.App.—San Antonio 1977, no writ).

A literal reading of the Mental Health Code would create circumstances where a voluntary patient, though obviously in need of mental health care, could absent himself from the hospital and remain beyond the reach of the health officials. Such a result could endanger not only the patient, but society as well. It is our opinion that the Legislature could not have intended such a result.

Attorney General opinions are not controlling, but are entitled to great weight unless clearly wrong. *Smith v. Panorama Country Club*, 538 S.W.2d 268 (Tex.Civ.App.—Beaumont 1976, no writ); *Broom v. Tyler County Commissioner's Court*, 560 S.W.2d 435 (Tex.Civ.App.—Beaumont 1977, no

writ). We hold that the Attorney General correctly stated the law, that when a voluntary patient absents himself without consent, he, in effect, is no longer a voluntary patient, and may be committed pursuant to involuntary commitment procedures. Implicit in our holding is the conclusion that Art. 5547–80 does not provide the exclusive method to discharge patients. We overrule appellant's point of error.

## II.

Appellant next contends that the trial court erred in admitting the testimony of Dr. Robert Turner, a staff psychiatrist at the State Hospital. Dr. Turner's testimony was based upon his observation of appellant from August 13, 1979, to the date of trial, a period of approximately two months. Appellant argues that the admission of this testimony, over appellant's objection, violated House Bill 1163 (codified as Tex.Rev.Civ. Stat.Ann. art. 5561h), effective August 27, 1979, relating to the confidentiality of communications between a patient and professional pertaining to the mental or emotional health of an individual.

The pertinent section of House Bill 1163 states:

"Sec. (a) Communication between a patient/client and a professional is confidential and shall not be disclosed except as provided in Section 4 of this Act."

Section 4 states the exceptions to the privilege in court proceedings, but the only pertinent subsections to this appeal relate to a patient waiving the privilege in writing, or:

"(4) when the judges [sic] finds that the patient/client after having been previously informed that communications would not be privileged has made communications to a professional in the course of a court-ordered examination relating to the patient's/client's mental or emotional condition or disorder, providing that such communications shall not be privileged only with respect to issues involving the patient's/client's mental or emotional health. On granting of the order, the court, in determining the extent to which any disclosure of all or any

part of any communication is necessary, shall impose appropriate safeguards against unauthorized disclosure."

The State argues in response that House Bill 1163 is contrary to the general intent of the Mental Health Code and the Texas Constitution. We must determine in this case of first impression whether House Bill 1163 applies to the Mental Health Code, and thus, whether the trial court erred in admitting into evidence Dr. Turner's testimony.

■ It is the duty of courts to construe a law as written, and, if possible, ascertain its intention from the language used therein. *Government Personnel Mutual Life Insurance Co. v. Wear*, 151 Tex. 454, 251 S.W.2d 525 (1952). We are further guided by the "plain meaning" rule, which directs a court to enforce an act as written. *Calvert v. Electro-Science Investors, Inc.*, 509 S.W.2d 700 (Tex.Civ.App.—Austin 1974, no writ).

It is clear that the purpose of House Bill 1163 is to protect the privacy of personal matters regarding a person's mental health. The Act speaks in terms of absolutes, stating that "Communication between a patient/client and a professional is confidential . . ." and "Records of the identity, diagnosis, evaluation, or treatment of a patient/client which are created or maintained by a professional are confidential and shall not be disclosed except as provided in Section 4 of this Act . . ." If the Legislature had desired, it could have worded the Act so that it would not apply to mental health commitments. The Legislature obviously chose not to do so.

We disagree with the State's argument that the restrictions of House Bill 1163 are contrary to the general intentions of the Mental Health Code and the Texas Constitution. Before a hearing on Application for Temporary Hospitalization, the Code requires that the patient be examined by two physicians. Tex.Rev.Civ.Stat.Ann. art. 5547–32 (1958). Tex.Const. art. I, § 15–a, states that, "No person shall be committed as a person of unsound mind except on competent medical or psychiatric testimony . . ."

Section 4(4) of House Bill 1163 provides an exception to the privilege of confidentiality, allowing a judge to order an examination relating to the patient's mental health, and providing that the patient be informed that communications would not be privileged. House Bill 1163 does not, therefore, defeat the intent of the Mental Health Code or the Texas Constitution. It merely places a limitation upon the nature of testimony admissible against the alleged mentally ill person. It is not the role of this Court to decide whether the limitation has been wisely placed. "The wisdom of the courts—however impeccably conceived—may not be, even under our system of blended law and equity, substituted for the plainly expressed intention of the Legislature." *In Re Dulin's Estate*, 244 S.W.2d 242 (Tex.Civ.App.—Galveston 1951, no writ). The Legislature may enact statutes as it deems proper, and the courts must accept the statutes as written when there is no question of constitutionality. *Texas Association of Steel Importers, Inc. v. Texas Highway Commission*, 364 S.W.2d 749 (Tex. Civ.App.—Austin), *aff'd*, 372 S.W.2d 525 (Tex.1963).

We have concluded that House Bill 1163 does apply to the Mental Health Code. Since Dr. Turner's testimony was based upon communications and observations which were privileged, the trial court erred in admitting his testimony over appellant's objection. Because Dr. Turner's testimony was the only medical evidence offered by the State, Art. 5547–32; Tex. Const. art. I, § 15–a, we must reverse the judgment of the trial court and remand the cause for a new trial in accordance with this opinion. Rule 434, Texas Rules of Civil Procedure.

Appellant's third point of error, complaining of insufficiency of evidence, need not be reached in light of our disposition of point of error number two. The judgment of the trial court is reversed and the cause is remanded for new trial in accordance with this opinion.

Reversed and remanded.