Robert CHAPMAN, Appellant,

v.

PAUL R. WILSON, JR., D.D.S., INC.,
Paul R. Wilson, Jr., and Corrine
Scalzitti, D.M.D., Appellees.

No. 3–90–223–CV.

Court of Appeals of Texas,
Austin.

March 18, 1992.

Rehearing Overruled April 29, 1992.

Before POWERS, JONES and SMITH, JJ.

## ON MOTION FOR REHEARING

JONES, Justice.

The opinion issued by this Court on January 8, 1992, is withdrawn, and the following is filed in lieu thereof.

Robert Chapman sued Paul R. Wilson, Jr., D.D.S., Inc., Paul R. Wilson, Jr., and Corrine Scalzitti (collectively, "defendants") for negligence, breach of implied warranty, and misrepresentations constituting violations of the Deceptive Trade Practices Act, Tex.Bus. & Com.Code Ann. §§ 17.41–17.63 (1987 & Supp.1991) (DTPA), growing out of dental services provided by defendants. After striking Chapman's expert witnesses as a discovery sanction, the trial court granted summary judgment in favor of defendants on all three of Chapman's causes of action. Chapman appeals. We will affirm in part and reverse and remand in part.

In his petition, Chapman alleged that defendants provided care and treatment relating to the extraction of his wisdom teeth. Chapman initially consulted Wilson, who referred him to Scalzitti for the actual extractions. For his first cause of action, Chapman alleged that defendants committed various acts of negligence during and after the extractions. He next alleged that defendants made various misrepresentations to him, including: that they were specialists in the extraction of wisdom teeth; that he would be administered a general anesthesia; that defendants were competent to administer a general anesthesia; and that no further treatment after the extractions would be necessary. He alleged that such representations were false and were committed knowingly, all in violation of the DTPA. Finally, Chapman alleged that defendants "breached the implied warranty that their services would be performed in a good and workmanlike manner." It is not clear from the record whether Chapman intended to bring this last claim under the DTPA.

Regarding his damages, Chapman alleged that after the extractions were performed he suffered severe problems with his mouth and jaw, including an inability to open his mouth, which eventually required surgery to correct. He also alleged, in general terms, that he suffered extreme physical and mental pain.

Chapman attacks the trial court's judgment on two grounds: first, he challenges the order striking his expert witnesses; second, he complains of the order granting summary judgment against him.

## ORDER STRIKING EXPERT WITNESSES

In his first point of error, Chapman asserts that the trial court erred in striking his expert witnesses as a discovery sanc-

tion. During the course of pre-trial discovery, defendants sent Chapman a set of interrogatories, one of which asked:

> Please state the name, address, telephone number and specialty of any person you may expect to call as an expert witness at the trial of this case, *the subject matter on which the expert may testify, the mental impressions and opinions held by the expert, the facts which relate to or form the basis of the mental impressions or opinions held by the expert, . . . .*

(Emphasis added.) Chapman did not object to this interrogatory; rather, he responded: "No experts have been designated at this time." Thirty-three days before the case was scheduled for trial, defendants filed a motion requesting the court to preclude Chapman from designating any expert witnesses because he had failed to supplement the foregoing answer. The docket sheet reflects that the trial court allowed Chapman to have until the thirtieth day before trial to designate experts.

On the thirtieth day before trial, Chapman designated six experts in a supplemental answer to the foregoing interrogatory. The supplementation did not, however, state the subject matter on which the experts would testify, their mental impressions and opinions, or the facts which relate to or form the basis of their mental impressions or opinions. Instead, it contained vague responses such as "findings can be found in the records which has [sic] been previously produced," and "findings have been previously produced." As to one of the six experts, Chapman's supplemental answer stated only the expert's name, address, telephone number, and medical specialty. When the additional information still had not been provided a week before trial, the court, on defendants' motion, struck Chapman's experts. Chapman made no attempt to show good cause for his failure to further supplement his answer. Chapman now complains that the trial court abused its discretion in striking his experts. We disagree.

Chapman's supplemental answers were grossly inadequate to provide the informa-

tion requested. Moreover, such information is expressly recognized as discoverable in Rule 166b(2)(e)(1) of the Texas Rules of Civil Procedure. Defendants were not seeking production of a document, as in *Loftin v. Martin,* 776 S.W.2d 145 (Tex. 1989), so the request was not premature. Accordingly, Chapman's failure to supplement triggered the automatic sanction of Rule 215(5), Tex.R.Civ.P., that a party failing to supplement "shall not be entitled to present evidence which the party was under a duty to provide in a response or supplemental response or to offer the testimony of an expert witness. . . ." *See Sharp v. Broadway Nat'l Bank,* 784 S.W.2d 669 (Tex.1990). We conclude that the trial court did not abuse its discretion in striking Chapman's experts. Point of error one is overruled.

## ORDER GRANTING SUMMARY JUDGMENT

In his second point of error, Chapman complains that the trial court erred in granting summary judgment against him. In our review of this point of error, we will consider each of Chapman's three causes of action separately.

The standards for reviewing a summary judgment are well established:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Mgt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

*1. Negligence*

■ In order for a defendant to be entitled to summary judgment, he must conclusively establish that there is no genuine issue of fact as to at least one essential

element of the plaintiff's cause of action. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970). In a medical malpractice case based on negligence, the requisite proof of negligence can only be established through expert testimony. *Hart v. Van Zandt,* 399 S.W.2d 791, 792 (Tex.1965); *Shook v. Herman,* 759 S.W.2d 743, 747 (Tex.App.1988, writ denied).

In the present case, the striking of Chapman's expert witnesses effectively precluded him from establishing negligence on the part of defendants. Defendants were, therefore, entitled to summary judgment as to the negligence cause of action.

In addition, defendants supported their motion for summary judgment with affidavits that met the requirements set forth in Rule 166a(c) of the Rules of Civil Procedure:

> A summary judgment may be based on uncontroverted testimonial evidence of ... an expert witness as to subject matter concerning which the trier of fact must be guided solely by the opinion testimony of experts, if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted.

Tex.R.Civ.P. 166a(c). In the absence of controverting summary judgment evidence, such affidavits independently entitled defendants to summary judgment. *See Jones v. Papp,* 782 S.W.2d 236, 243 (Tex.App. 1989, writ denied); *Shook,* 759 S.W.2d at 746–47; *Pinckley v. Dr. Francisco Gallegos, M.D., P.A.,* 740 S.W.2d 529, 532 (Tex. App.1987, writ denied); *Duncan v. Horning,* 587 S.W.2d 471, 473–74 (Tex.Civ.App. 1979, no writ). The trial court did not err in granting summary judgment on Chapman's negligence claim.

*2. Breach of Implied Warranty*

■ Chapman pleaded that defendants "breached the implied warranty that their services would be performed in a good and workmanlike manner." On appeal, Chapman argues that the trial court erred in granting summary judgment on his implied-warranty cause of action. We disagree.

First, Texas has not recognized an implied warranty for good and workmanlike performance of purely professional services. The existence of such an implied warranty was expressly rejected in *Dennis v. Allison,* 698 S.W.2d 94 (Tex.1985). Chapman argues, however, that in *Melody Home Manufacturing Co. v. Barnes,* 741 S.W.2d 349 (Tex.1987), the Texas Supreme Court has indicated that it is "willing to overrule" *Dennis.* Whether or not one can read into *Melody Home* a "willingness" to overrule *Dennis,* the court did not actually do so. Rather, the court expressly limited application of the implied warranty to repair or modification services of existing tangible goods or property. *Melody Home,* 741 S.W.2d at 354. Indeed, the court stated that "[t]he question whether an implied warranty applies to services in which the essence of the transaction is the exercise of professional judgment by the service provider is not before us." *Id.*

In a subsequent case involving horse training services, the supreme court applied, but carefully refrained from expanding, the implied warranty recognized in *Melody Home. See Archibald v. Act III Arabians,* 755 S.W.2d 84, 85–86 (Tex.1988). Because the supreme court has not overruled *Dennis,* and because it has not applied an implied warranty of good and workmanlike service to all service transactions, *Dennis* remains good law and controls this issue in the present case. *See Kubinsky v. Van Zandt Realtors,* 811 S.W.2d 711, 715–16 (Tex.App.1991, writ denied); *Eoff v. Hal & Charlie Peterson Foundation,* 811 S.W.2d 187, 195–96 (Tex. App.1991, no writ); *Wisenbarger v. Gonzales Warm Springs Rehab. Hosp., Inc.,* 789 S.W.2d 688, 691 (Tex.App.1990, writ denied); *Forestpark Enterprises, Inc. v. Culpepper,* 754 S.W.2d 775, 778–79 (Tex. App.1988, writ denied). *But see White Budd Van Ness Partnership v. Major-Gladys Drive Joint Venture,* 798 S.W.2d 805, 812–14 (Tex.App.1990), *writ dism'd,* 811 S.W.2d 541 (Tex.1991).

In the present case, the essence of the transaction was defendants' exercise of

professional judgment. Accordingly, no implied warranty arose.

Second, as in a negligence action, proving that a physician failed to provide professional services in a good and workmanlike manner would require expert testimony. *Cf. Melody Home*, 741 S.W.2d at 355. Since the trial court had struck Chapman's experts, he had no way to prove that element of his implied-warranty cause of action.

█ If, by his implied-warranty claim, Chapman intended to state a cause of action under the DTPA, there is a third basis on which the summary judgment may be upheld. Section 12.01(a) of the Texas Medical Liability & Insurance Improvement Act ("Medical Liability Act") provides:

> Notwithstanding any other law, no provisions of Sections 17.41–17.63, Business & Commerce Code, shall apply to physicians or health care providers as defined in Section 1.03(3) of this Act, with respect to claims for damages for personal injury or death resulting, or alleged to have resulted, *from negligence* on the part of any physician or health care provider.

Tex.Rev.Civ.Stat.Ann. art. 4590i, § 12.01(a) (Pamph.1992) (emphasis added). Article 4590i precludes a cause of action founded on negligence even if it is phrased in terms of breach of implied warranty. *Wisenbarger*, 789 S.W.2d at 690–91. Because of the similarity between the negligence standard and the "good and workmanlike manner" standard alleged in Chapman's implied-warranty claim, we conclude that the legislature intended for the exclusion contained in section 12.01(a) of the Medical Liability Act to encompass such implied-warranty causes of action brought under the DTPA. The trial court did not err in granting summary judgment on Chapman's implied-warranty claim.

### 3. *Misrepresentations*

Finally, Chapman contends that the trial court erred in granting summary judgment as to his cause of action for misrepresentations under the DTPA. Chapman's petition contains the following general allegations regarding this cause of action:

> Plaintiff would further show the court that the representations made by Defendants were false, misleading and deceptive in that said Defendants represented that they were specialists in the extraction of wisdom teeth; that Plaintiff would be administered a general anesthesia; that Defendants were competent to administer a general anesthesia; that the first extraction complications were normal and that no further treatment after the extraction would be necessary.

Although Chapman's use of the general term "defendants" in his pleadings permits his misrepresentation claim to be construed as being against all defendants, his own affidavit in opposition to the defendants' motion for summary judgment makes it clear that none of the misrepresentations about which he complains in this cause of action were made by Dr. Scalzitti. The affidavit also makes it clear that all of Chapman's complaints about Dr. Scalzitti are founded on negligence, not on knowing misrepresentation. Accordingly, we conclude that the trial court did not err in granting summary judgment for Dr. Scalzitti on Chapman's DTPA-misrepresentation cause of action.

We will address separately Chapman's misrepresentation claim as it relates to the Wilson defendants. In support of the trial court's judgment, the Wilson defendants assert: (1) that section 12.01(a) of the Medical Liability Act precludes Chapman from asserting any cause of action against them under the DTPA, even one for false representations; (2) that Chapman's misrepresentation claim requires expert testimony to show causation between the misrepresentations and Chapman's damages. We disagree.

█ Unless a statute is ambiguous, we must follow its clear language and seek the intent of the legislature as found in the plain and common meaning of the words and terms used. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 352 (Tex.1990); *RepublicBank Dallas, N.A. v. Interkal, Inc.*, 691 S.W.2d 605, 607 (Tex.1985). If the statute is clear and unambiguous, extrinsic aids and rules of statutory construction are

inappropriate, and the provisions should be given their common everyday meaning. *Cail v. Service Motors, Inc.*, 660 S.W.2d 814, 815 (Tex.1983).

■ The Wilson defendants argue that the most reasonable construction of section 12.01(a) mandates a complete exemption of health-care providers from liability under the DTPA for professional services rendered. However, such a reading ignores the clear import of the language of the statute. While section 12.01(a) does provide an exemption for health care providers from DTPA actions, the language of the statute specifically limits this exemption to DTPA actions based on "negligence." If the legislature had intended for section 12.-01(a) to exempt health care providers from every DTPA cause of action, irrespective of its basis, then that intention could have been expressed in plain and specific language. *See Government Personnel Mut. Life Ins. Co. v. Wear*, 151 Tex. 454, 251 S.W.2d 525, 529 (1952). This the legislature did not do. For this Court to stretch the exemption beyond negligence would, therefore, be to invade the field of the legislature.

We decline the Wilson defendants' invitation to read section 12.01(a) as a complete exemption for health care providers from actions brought under the DTPA; rather, we conclude that the language of section 12.01(a) exempts health care providers only from DTPA claims based on negligence (i.e., breach of a duty to use "ordinary prudence," "reasonable care," or the like) or the breach of a comparable duty. This construction of section 12.01(a) is one that is sanctioned by several commentators. *See* Alderman, *The Business of Medicine— Health Care Providers, Physicians, and the Deceptive Trade Practices Act*, 26 Hous.L.Rev. 109, 140–43 (1989); Branson, *Personal Torts*, 45 Sw.L.J. 569, 582–83 (1991); *see also* Bragg, Maxwell, & Longley, *Texas Consumer Litigation* § 2.02 (2d ed. 1983 & Supp.1990–91).

A misrepresentation may, of course, be made negligently. *See, e.g., Cook Consultants, Inc. v. Larson*, 700 S.W.2d 231 (Tex. App.1985, writ ref'd n.r.e.); *Caldwell v. Overton*, 554 S.W.2d 832 (Tex.Civ.App. 1977, no writ). In the present case, however, Chapman alleged that "the conduct of the said Defendants as described in this petition was committed knowingly; that is, that Defendants were actually aware of the falsity, deception and unfairness of the conduct about which Plaintiff complains." Thus, for us to find that the Medical Liability Act bars Chapman's misrepresentation claim, we would have to determine that a cause of action based on knowing misrepresentations falls within the ambit of the plain meaning of negligence. This we decline to do. "Knowing" action is not the equivalent of negligent action. *See Mancorp, Inc. v. Culpepper*, 781 S.W.2d 618, 626 (Tex.App.1989), *rev'd on other grounds*, 802 S.W.2d 226 (Tex.1990); *cf.* Tex. Penal Code Ann. § 6.03(b), (d) (1974).

Because section 12.01(a) does not bar Chapman's DTPA claim, at least to the extent it is based on knowing misrepresentations, the Wilson defendants could obtain summary judgment on that claim only by conclusively refuting the substance of the alleged misrepresentations or the extent of defendants' knowledge, as alleged in Chapman's petition. *McFadden v. American United Life Ins. Co.*, 658 S.W.2d 147, 148 (Tex.1983). Defendants made no real attempt to do so, however, relying instead on the argument that section 12.01(a) bars any conceivable cause of action under the DTPA. Because we have held that premise incorrect, the trial court erred in granting summary judgment for the Wilson defendants on Chapman's claim that they violated the DTPA by affirmative misrepresentations.

■ Finally, the Wilson defendants assert that even if Chapman's DTPA-misrepresentation claim is not barred by the Medical Liability Act, the striking of his expert witnesses prevents him from proving a causal relation between the alleged misrepresentations and any possible damages. Again, we disagree.

Chapman effectively pleaded that the Wilson defendants knowingly misrepresented (1) that they were specialists in the extraction of wisdom teeth; (2) that they

would administer a general anesthesia to Chapman; (3) that they were competent to administer a general anesthesia; and (4) that the first extraction complications were normal and that no further treatment after the extraction would be necessary. In his affidavit filed in opposition to defendants' motion for summary judgment, Chapman averred that he had suffered great pain in a previous wisdom-tooth extraction; that he was very concerned with the type of anesthesia used; that he was terrified of needles; that he had a history of being "hard to numb"; that he had a history of possible allergic reaction to commonly used local anesthetics; that as a result of these factors he specifically requested a general anesthesia; and that Dr. Wilson assured him that a general anesthesia would be used. Chapman also swore that when he reported to Dr. Scalzitti for the extraction, she told him that she had not been informed that a general anesthesia was to be used; that a general anesthesia could not be used that day because he had not taken the proper "pre-medication" pill; that it was not possible for her to reschedule the surgery within the next thirty days; and that the procedure could be done that day with a local anesthetic, which would be "relatively painless, quick and simple." Dr. Scalzitti proceeded with a local anesthetic, apparently with Chapman's consent or acquiescence. Finally, Chapman averred that during the extraction he experienced "pain so intense that it caused me to faint."

In a medical malpractice case, the causation element must generally be proven by expert medical testimony. *Lesser v. St. Elizabeth Hosp.*, 807 S.W.2d 657, 659 (Tex. App.1991, writ denied). Such testimony is not required, however, where the alleged acts and injuries are plainly within the common knowledge of laymen. *Martin v. Petta*, 694 S.W.2d 233, 239 (Tex.App.1985, writ ref'd n.r.e.).

In the present case, Chapman pleaded his damages in general terms. Reading his pleadings broadly, as we must, the damages he claims could include the physical pain suffered during the procedure itself, allegedly as a result of receiving a local anesthetic instead of the general anesthesia promised by Dr. Wilson.[1] A layman could, without the aid of expert testimony, determine whether the Wilson defendants' alleged misrepresentations were a producing cause of the "great pain" that Chapman claims to have suffered during the extractions. *Cf. Johnson v. DeLay*, 809 S.W.2d 552, 555 (Tex.App.1991, writ denied). Therefore, taking Chapman's testimony as true, and giving him the benefit of every doubt and reasonable inference, we conclude that the Wilson defendants have not shown as a matter of law that the absence of expert medical testimony would necessarily prevent Chapman from proving a causal relation between the alleged misrepresentations and *all possible damages* that he could have sustained. Because this Court has no way of determining from the present record how much of the damages Chapman seeks are for the physical pain he claims to have suffered during the extractions, we must reverse the summary judgment on this cause of action in its entirety as to the Wilson defendants.

The portion of the trial court's judgment granting summary judgment as to Chapman's claim for misrepresentations under the DTPA is reversed only as to defendants Paul R. Wilson, D.D.S., Inc. and Paul R. Wilson, D.D.S., and that portion of the cause is remanded to the trial court for further proceedings. The remainder of the trial court's judgment is affirmed.

---

1. We do not address what effect Chapman's apparent agreement to or acquiescence in the use of a local anesthetic might have on any right to recover damages. The issue has not been raised in this proceeding, either in this Court or the court below.