

# The Attorney General of Texas

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711-2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915-533-3484

1001 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

December 30, 1983

Mr. Homer A. Foerster
Executive Director
State Purchasing & General
  Services Commission
P. O. Box 13047, Capitol Station
Austin, Texas 78711

Opinion No. JM-114

Re: Costs to persons requesting
information under the Open
Records Act, article 6252-17a,
V.T.C.S.

Dear Mr. Foerster:

Section 9 of the Open Records Act, article 6252-17a, V.T.C.S. provides as follows:

> (a) The cost to any person requesting noncertified photographic reproductions of public records comprised of pages up to legal size shall not be excessive. The State Board of Control shall from time to time determine the actual cost of standard size reproductions and shall periodically publish these cost figures for use by agencies in determining charges to be made pursuant to this Act.

> (b) Charges made for access to public records comprised in any form other than up to standard sized pages or in computer record banks, microfilm records, or other similar record keeping systems, shall be set upon consultation between the custodian of the records and the State Board of Control, giving due consideration to the expenses involved in providing the public records making every effort to match the charges with the actual cost of providing the records.

You have asked the following questions concerning this provision

> 1. If a request for copies of open records requires the governmental body to utilize the services of its employees to make the copies of standard sized records under subsection (a), may the governmental body include in its determination of charges a charge for that employee's time?

2. If no copies are requested, may the governmental body charge for the time of its employment spent in making the standard sized records available for review?  (The Commission has not assessed such a charge itself, but has not taken a position for other governmental bodies.)

3. If the governmental body must edit out privileged, or excepted, information before making requested copies, may the governmental body charge for this editing process?  Is it possible to consider that the necessity for editing requested material makes the request one under subsection (b) where a cost of access would be allowed?  (The commission has considered that subsection (b) applies in such cases, and has suggested during consultations thereunder that such editing costs be included as a cost of access.)

4. What remedy do requesting parties have in cases where they are being charged in excess of reproduction costs published by the commission, or where the governmental body assesses its charges under subsection (b) and refuses to consult with the commission as required, and where a complaint is raised by the requesting party?  (The commission has not seen its role here to include enforcement in any sense.  We have published reproduction costs, as per the attached Texas Register article, and carry out consultations with governmental bodies statewide as we are contacted and as needed.)

5. In determining a cost of access under subsection (b) to what extent, if any, may a governmental body include "overhead" charges?

The language and legislative history of section 9 shed little light on your questions.  We must therefore answer them in the manner which, in our opinion, most fully comports with the legislative intent underlying the Open Records Act.  The following well-established principles must guide our analysis:  (1) the fundamental objective of statutory construction is to ascertain legislative intent; (2) in deciding how a statute should be applied, one may consider the ends which the legislature sought to achieve in enacting it; and (3) a statute should be given a sensible construction which facilitates the achievement of its objective, not one which defeats its purpose.  See generally Citizens Bank of Bryan v. First State Bank of Hearne, 580 S.W.2d 344 (Tex. 1979); Salas v. State, 592 S.W.2d 653 (Tex. Civ. App.

- Austin 1979, no writ). Moreover, statutes fixing official fees are strictly construed against allowing a fee by implication. See Moore v. Sheppard, 192 S.W.2d 559 (Tex. 1946).

We will address your second question first. Governmental entities may charge only those costs authorized by section 9. Your second question refers to "standard sized records," which are the subject of subsection (a) of section 9. Subsection (a) only authorizes charges for reproductions of standard sized records. Manifestly, where no reproduction is made, no costs are authorized under subsection (a).

Your first question does assume a reproduction. Subsection (a), however, explicitly authorizes only the charging of "the actual cost of standard size reproductions." To answer your first question in the affirmative, we would have to conclude that the charges for an employee's time to which you refer are impliedly authorized by subsection (a). We cannot, however, reach this conclusion.

A governmental entity employs individuals, and compensates them, to assist it in discharging its lawful duties and functions. Among these duties and functions is the obligation to provide the public with that to which it is entitled by law. Where the law in question is the Open Records Act, the "duty" is to provide information collected, assembled, or maintained by the entity to members of the public who request it and are legally entitled to it.

Nothing short of an explicit declaration would convince us that the legislature intended that governmental entities be able to impose a separate charge to the public for the time spent by their employees in compiling subsection (a) records and making them available to the public. As noted, a governmental employee who provides public records to the public is simply discharging one of his primary duties as a governmental employee. He is paid by the entity for discharging such duties. Absent express statutory authority, we do not believe that entities may in effect require the public to reimburse them for the time spent by their employees in providing the public with a service to which it is legally entitled. If the service provided by the entity is required by law to be provided, we believe that the costs incurred in providing the service must be borne by the entity itself. The entity may pass these costs along to the public only if it is expressly authorized to do so.

Furthermore, section 9(a) requires the State Purchasing and General Services Commission [formerly the Board of Control] to determine the "actual cost of standard size reproductions." In our opinion, the costs set by the commission under this provision comprehend employee time in compiling records and making them available to the public. The amount which the commission sets as

"actual costs" normally exceeds to some degree the cost to an agency of merely making copies. We believe that a charge for employee time is built into the costs set by the board under section 9(a).

Your third question essentially asks whether it is permissible to charge the public for the time spent by governmental employees in deleting from requested materials those portions excepted under section 3(a) of the act. For the reasons we have given, we are firmly of the opinion that, under the act as presently written, it is impermissible to charge for employee time spent in compiling and/or reproducing up-to-standard size documents, which are the subject of section 9(a). We are even more strongly convinced that it is impermissible to charge for employee time spent in deleting excepted material from such documents. Where employees compile or reproduce materials for a requestor, they are performing a service for that requestor. Therefore, one could argue that if the act should be construed as permitting any charges for employee time, it should be these charges, since the expenditure of employee time directly benefits the requestor. But where the employee time is spent in deleting material from the requested information -- which, of course, the governmental entity is not obligated to do except where section 3(a)(1) information is involved -- it cannot be argued that the requestor benefits in any way from the expenditure of time. To conclude that a governmental body may charge a requestor for time spent by its employees in carrying out its decision to withhold material from the requestor is to conclude that it may charge the requestor for information that he does not get. Under this conclusion, the more the government decides to withhold, the more the requestor will have to pay. We do not believe this is a reasonable result.

The remaining issue is whether it is permissible to charge for employee time spent in deleting excepted material from information embraced within subsection (b) of section 9. Subsection (b), which is quoted in full at the outset of this opinion, does authorize the charging of certain expenses involved in "providing the public records" to which it applies. This subsection was construed in Hendricks v. Board of Trustees of Spring Branch Independent School District, 525 S.W.2d 930 (Tex. Civ. App. - Houston [1st Dist.] 1975, writ ref'd n.r.e.), which, we note, quite clearly distinguishes between subsections (b) and (a) of section 9 and supports our conclusion that "access" charges are not permitted for up-to-standard sized reproductions. See especially Hendricks, supra, at 933, which refers to "the class [of materials] for which no charge may be made," i.e., the material embraced in subsection 9(a). (Emphasis added).

In Hendricks, the requestor sought financial records of the school district covering a seven year period. Hundreds of thousands of records were involved. Before complying with the request for these

documents, the school district informed the requestor of its intent to charge him "a fair and equitable, but sufficient, charge for access to those records and documents," which were maintained in several different locations, including warehouses, microfilm, and computer records banks. Id. at 931. The requestor sought a writ of mandamus from the district court to compel the school district to grant him access to the requested records "without requiring him to reimburse the school district for its costs incurred in the retrieving, assimilation and production of those records." Id. The court denied the requestor's application, and the court of civil appeals affirmed the judgment.

In discussing subsection 9(b), the court of civil appeals said:

> This paragraph does not speak of copies of public records; it speaks of charges made for access to public records and to providing public records. We consider that it authorizes the public body to make a charge for access to public records corresponding to the actual cost of making the records available for inspection if the records are larger than standard size or if they are maintained in computer record banks, micro-film records, or other similar record keeping systems. (Emphasis added).

Id. at 932. In its concluding statement, the court said:

> The size of the fee is restricted by the provision requiring that it approximate the actual cost of preparing the material for inspection.

Id. at 933.

One of the difficulties with Hendricks is that it fails to indicate exactly what was included in the school district's "access" charges. Another is that the court's statements are ambiguous. Statements such as "actual cost of making the records available for inspection" are hardly self-explanatory. Thus, to determine how Hendricks affects the question before us, we must construe the court's language.

We emphasize, just as Hendricks did, that subsection (b) of section 9 permits certain "access" charges but that subsection (a) does not. The difference in the approach of these two subsections to access charges can only be attributed to the difference in their subject matter. Subsection (a) deals with up-to-standard size documents, whereas subsection (b) applies to larger-than-standard size documents and to information stored in computer record banks,

microfilm, and "other similar record keeping systems." In our opinion, what subsection (b) was actually intended to authorize can only be answered with these differences firmly in mind.

Unlike a piece of paper containing information, information stored in computer banks, on microfilm, etc., cannot simply be handed to a requestor. Something must be done to put the information in a meaningful form: a computer program must be run and a printout obtained; microfilm records must be reproduced in another form, unless the actual microfilm or a copy thereof is provided; and similar operations must be performed where other "similar record keeping systems" are used. We believe the legislature's intent in authorizing access charges for the records enumerated in subsection (b) must have been to allow governmental entities to recover those reproduction costs incurred in putting information in computer banks, on microfilm, etc., into a form which can be used by the requestor. Such costs might, for example, include the costs involved in running the computer or in reproducing records stored on microfilm; they would not, however, include time spent by employees in deleting from the records those portions excepted from required disclosure under section 3(a) of the act.

Our conclusion also finds support in section 11 of the act, which states:

> A bond for payment of costs for the preparation of such public records, or a prepayment in cash of the anticipated costs for the preparation of such records, may be required by the head of the department or agency as a condition precedent to the preparation of such record where the record is unduly costly and its reproduction would cause undue hardship to the department or agency if the costs were not paid. (Emphasis added).

This provision, which talks in terms of the "preparation" of public records, quite clearly links "preparation" with "reproduction," thus indicating that the former term should be given a limited construction. This construction is, in our opinion, appropriate for section 9. Costs of "reproduction" do not, in our view, include employee time.

For these reasons, we answer your first three questions in the negative. Our discussion also answers your fifth question.

The Open Records Act provides no guidance on your fourth question. In our opinion, the appropriate method to challenge charges made by governmental bodies is the one utilized in the Hendricks case. A requestor who feels that he has been erroneously charged should seek

a writ of mandamus to compel the governmental body in question to release the requested materials without those charges.

Admittedly section 9 is somewhat ambiguous and is therefore subject to a variety of interpretations. Thus, our conclusions are in large part dictated by the command of section 14(d) of the Open Records Act, which states that the act "shall be liberally construed in favor of the granting of any request for information," and that of section 1 of the act, which provides that the act "shall be liberally construed with the view of carrying out the . . . declaration of public policy" set forth therein. Hence the present situation is one in which legislative clarification might be helpful.

## S U M M A R Y

A governmental body may not ordinarily charge
for employee time in editing records or in making
records available under the Open Records Act.

Very truly yours,

J I M   M A T T O X
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

Prepared by Jon Bible
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Jon Bible
Colin Carl
Susan Garrison
Jim Moellinger
Nancy Sutton