Jennifer A. DRURY, Appellant,

v.

**BAPTIST MEMORIAL HOSPITAL SYSTEM, Appellee.**

No. 04–95–00393–CV.

Court of Appeals of Texas, San Antonio.

Oct. 9, 1996.

Rehearing Overruled Nov. 14, 1996.

---

Andy Cline, Law Offices of Andy Cline, San Antonio, for appellant.

Cynthia Day King, Ruth Greenfield Malinas, Ryan G. Anderson, Ball & Weed, P.C., Rosemary R. Williams, Lane, Gannon & Taliaferro, L.L.P., San Antonio, for appellee.

Before RICKHOFF, LOPEZ and ANTONIO G. CANTU,[1] JJ.

ANTONIO G. CANTU, Justice (Assigned).

This is an appeal from a summary judgment granted in favor of appellee, the Baptist Memorial Hospital System (Baptist).

Appellant, Jennifer A. Drury (Drury) sued Baptist after she was transfused with a unit of "banked" blood during surgery at the Baptist Hospital. Drury alleged that Baptist was negligent and that it had violated several provisions of the Texas Deceptive Trade

---

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003(b) (Vernon 1988).

Practices Act (DTPA)[2] in administering the unit of banked blood despite her stated preference that direct donor blood be used. Drury alleged that she sustained actual damages as a result of the aforementioned negligence and DTPA violations, such damages being the result of mental anguish which arose from her fear of contracting the Human Immune Deficiency Virus (HIV) and, ultimately, Acquired Immune Deficiency Syndrome (AIDS).

Baptist moved for summary judgment on the grounds that no act by Baptist caused any legally compensable injury to Drury, that there was no reasonable basis for fearing contracting AIDS from the transfused banked blood and that Section 77.003 of the Texas Civil Practice and Remedies Code[3] and Section 12.01 of the Medical Liability and Insurance Improvement Act[4] expressly barred Drury's DTPA claims. The trial court granted summary judgment without stating the grounds on which summary judgment was predicated.

Baptist's summary judgment proof consists of excerpts from the oral deposition of Vernon David Theis, M.D., together with deposition exhibits. These exhibits include a "consent to surgery" form signed by Drury, a "disclosure and consent to medical and surgical procedures" form, a letter from the South Texas Regional Blood Blank to Vernon D. Theis, M.D., conveying the results of testing done on the unit of banked blood administered to Drury, and results of blood testing performed on Drury some five months following the transfusion of banked blood. Drury's summary judgment proof consists of excerpts from Theis' oral deposition.[5]

The summary judgment evidence reflects that on February 21, 1992, Drury was admitted to the Baptist Hospital for surgery to correct internal bleeding. Because a hysterectomy was planned, it was anticipated that Drury would require a transfusion of blood prior to her surgery. Dr. Theis and Drury discussed the use of direct donor blood rather than blood from a blood bank. Out of some concern about receiving banked blood, Drury made arrangements for friends to donate blood for her use. Drury's friends donated a total of four units of blood.

Dr. Theis advised Drury that the blood obtained from the direct donors might not be sufficient and that a possibility existed that blood obtained from a blood bank might be required. Dr. Theis also explained to Drury that the blood obtained from the direct donors was more likely to contain infectious diseases than the blood obtained from a blood bank.

Following the discussion with Dr. Theis, Drury consented to transfusion of blood and blood products during her hospitalization at Baptist by executing two forms. These consent forms were executed by Drury without any restrictions on the use of blood products to those donated by her friends, although the forms provided for that option.[6]

During the surgery, Baptist transfused two units of blood to Drury, one unit from the direct donor and another from a blood bank.

When Drury was advised of the use of banked blood and expressed concern, Dr. Theis obtained the laboratory results of the screening tests performed on the unit of banked blood administered to Drury. All of

---

2. TEX. BUS. & COMM.CODE ANN. §§ 17.41–.63 (Vernon 1987 & Supp.1996).

3. TEX. CIV. PRAC. & REM.CODE ANN. § 77.003 (Vernon Supp.1996).

4. TEX.REV.CIV. STAT. ANN. Art. 4590i, § 10.01 (Vernon Supp.1996).

5. Drury's response originally contained her own answers to interrogatories propounded by Baptist. Baptist objected to this summary judgment proof and after a hearing by the trial court the objections were sustained and the proof disregarded. See TEX.R.CIV. P. 168(2); *Elliott v. State,*

818 S.W.2d 71, 73 (Tex.App.—San Antonio 1991, writ denied).

6. One of the consent forms contains the following language:

> I(we) understand that my physician may discover other or different conditions which require additional or different procedures than those planned. I(we) authorize my physician, and such associates, technical assistants and other health care providers to perform such other procedures which are advisable in their professional judgment.
> I we do (do not) consent to the use of blood and blood products as deemed necessary.

the screening tests indicated a negative response.[7] Drury was subsequently tested on July 17, 1992 and her test results were negative for infection.

Dr. Theis, in his deposition testimony, expressed the opinion that Drury's risk is currently zero, that there is no risk of her contracting any infectious disease from the unit of banked blood that would likely show up in the future.

In her petition, Drury purportedly alleges two causes of action, one under the Medical Liability Insurance Improvement Act and the other under the Deceptive Trade Practices Act:

Defendant, by and through its employee(s) acting in the course and scope of their employment with Defendant, represented to Plaintiff, and entered into an agreement with Plaintiff, that she would receive the blood specifically donated by her friends after she was admitted to the hospital. Plaintiff was then admitted to Defendant's hospital, and at approximately 1:30 p.m. on February 21, 1992, Plaintiff was given a unit of blood which was not one of the specifically donated units of blood which Defendant represented and agreed Plaintiff would receive.

Defendant, by and through its employee(s) acting in the course and scope of their employment with Defendant, was negligent in administering the unknown unit of blood to Plaintiff, and such negligence was a proximate cause of Plaintiff receiving an unknown unit of blood rather than the specifically donated blood. As a result, Plaintiff has sustained damages in an amount of money in excess of the minimum jurisdictional limits of the court for which Plaintiff hereby sues Defendant. Plaintiff has fully complied with the provisions of Section 4.01 of Article 4590i (Medical Liability and Medical Insurance Improvement Act).

Further, the above described action on the part of Defendant, by and through its employee(s) acting in the course and scope of their employment with Defendant, constitutes false, misleading and deceptive acts and practices which are in violation of the Deceptive Trade Practices–Consumer Protection Act in the following respects:

1. Causing confusion as to the source and approval of goods in violation of Section 17.46(a)(2) of the Act;

2. Representing that goods have approval, characteristics and ingredients which they do not have in violation of Section 17.46(a)(5) of the Act;

3. Representing that services have characteristics, uses and benefits which they do not have in violation of Section 17.46(a)(5) of the Act;

4. Representing that goods are of a particular standard and quality when they are of another in violation of Section 17.46(a)(7) of the Act;

5. Representing that services are of a particular standard and quality when they are of another in violation of Section 17.46(a)(7) of the Act;

6. Representing that an agreement confers or involves rights and obligations which it does not have or involve in violation of Section 17.46(a)(12) of the Act; and,

7. Breach of an implied warranty in violation of Section 17.50(a)(2) of the Act.

*Standard of Review*

The standards for reviewing a summary judgment are well established:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

---

**7.** The laboratory report from the South Texas Regional Blood Bank indicates non-reactive to HIV, Hepatitis, Syphilis and other infectious conditions.

In order for a defendant to be entitled to summary judgment he must conclusively establish that there is no genuine issue of fact as to at least one essential element of the plaintiff's cause of action. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex. 1970). That is, he must show, as a matter of law, that the plaintiff has no cause of action against him. *Citizens First Nat'l Bank v. Cinco Exploration Co.*, 540 S.W.2d 292, 294 (Tex.1976). In the alternative, the defendant may prove conclusively all elements of an affirmative defense. *Palmer v. Enserch Corp.*, 728 S.W.2d 431, 435 (Tex.App.—Austin 1987, writ ref'd n.r.e.).

The trial court's order granting summary judgment does not state the particular ground on which summary judgment was granted. Therefore, the judgment will be affirmed if any of the grounds under which it was sought are established as a matter of law. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989). Accordingly, the burden is on the party appealing from such order to show that each of the independent arguments alleged in the motion is insufficient to support the order. *Rogers v. Ricane Ent., Inc.*, 772 S.W.2d 76, 79 (Tex.1989).

### THE NEGLIGENCE CLAIM

In a medical malpractice case based on negligence, the requisite proof of negligence can only be established through expert testimony. *Hart v. Van Zandt*, 399 S.W.2d 791, 792 (Tex.1965). Such testimony must be clear, positive, direct, otherwise credible, and free from contradictions and inconsistencies and capable of being readily controverted. *Republic Nat'l Leasing Corp. v. Schindler*, 717 S.W.2d 606, 607 (Tex.1986).

"The four essential elements of a medical negligence cause of action are: (1) a legally cognizable duty requiring conformity to a certain standard of conduct; (2) a failure to conform to the required standard; (3) actual injury; and (4) a reasonably close causal connection between the conduct and the alleged harm." *Gibson v. Methodist Hosp.*, 822 S.W.2d 95, 98 (Tex.App.—Hous-

ton [1st Dist.] 1991, writ denied); *see also McDole v. San Jacinto Methodist Hosp.*, 886 S.W.2d 357, 359 (Tex.App.—Houston [1st Dist.] 1994, no writ).

Drury relies on excerpts from Dr. Theis' deposition testimony claiming that it raises a fact issue as to the occurrence or nonoccurrence of an injury.[8] We are directed to the following isolated exchanges:

[Dr. Theis] A. I had, I believe it was prior to this, had arranged with the hospital administration to pay for her testing just to relieve her anxiety because we knew it caused her some anxiety.

\* \* \* \* \* \*

[Dr. Theis] A. I think that her anxiety was over receiving blood from a stranger.

\* \* \* \* \* \*

[Dr. Theis] A. I believe at this time there was about a four to six week latent period between HIV virus exposure or infusion and positive testing. Its [sic] currently only about three weeks, but at this time it was at the very, very most two months beyond the time she received the blood that the test would have turned positive if indeed she was exposed to the AIDS virus.

\* \* \* \* \* \*

[Attorney for Defendant]

Q. Did she specifically talk with you about that and say, doctor, I am very concerned about if I have banked blood that I may end up with some infection? Is that how it all got started?

[Dr. Theis] A. Yes, she did.

\* \* \* \* \* \*

[Dr. Theis] A. She realized she got blood— she received blood from someone that she didn't know and that caused her some anxiety.

\* \* \* \* \* \*

---

8. Drury apparently relies on the rule, in summary judgment proceedings, stating that if the movant's evidence only serves to raise a fact issue, the opponent of the motion need not offer contradictory proof. *See Torres v. Western Casualty & Sur. Co.*, 457 S.W.2d 50, 52 (Tex.1970).

Drury's deposition excerpts of Dr. Theis' testimony also contains the following exchange:

[Attorney for Defendant]

Q. Do you have an opinion, and again I'll ask you whether you do have an opinion and then I'll ask you to state what that opinion is, within a reasonable degree of medical probability do you have an opinion regarding whether Jennifer Drury received any injury as a result of the unit of banked blood she received on February 21 of 1992?

[Dr. Theis] A. Yes, I have an opinion.

Q. Could you tell us, please, what that opinion is?

A. My opinion is that there was absolutely no injury.

An examination of Drury's petition does not clearly disclose the nature of her alleged injuries. But it appears that the sole injury is the receipt of an unknown unit of blood as opposed to the specially donated blood. There is no contention that she suffered pain or mental anguish or any other misfortune other than disappointment and confusion as a result of being misled.

It is only in the summary judgment evidence that we are told that the injury is based upon a fear of contracting Acquired Immune Deficiency Syndrome (AIDS).

Drury's claim for her fear of contracting HIV and AIDS in the future is nothing more than a medical negligence claim. The sole distinctive feature in her claim is the type of injury she claims to have suffered, mental anguish arising from the fear of contracting HIV, and eventually AIDS, as a result of receiving banked blood.

As hereinbefore noted, Drury alleges that Baptist breached its duty to her by failing to transfuse her solely with direct donor blood and that as a result she suffered anxiety and concern arising from her fear that she might contract HIV and perhaps AIDS. There in no allegation that Baptist was negligent in the

manner in which the transfusion was given. Nor does she allege that she suffered any physical trauma as a result of the transfusion.

Baptist argues that it has conclusively negated the injury element of Drury's claim, and is, therefore, entitled to summary judgment on the negligence claim. *See Gibbs,* 450 S.W.2d at 828.

Drury says that fear of contracting a disease alone should be an element of damages for which she should be able to recover. No case authority is offered in support of this proposition, but we are requested to so hold.

Baptist recognizes that no Texas Court, so far as research shows, has held that a recovery can be had where the only damages sought are for mental anguish resulting from fear of contracting AIDS in the future.[9] We are, however, directed to cases involving a fear of contracting cancer and other maladies and are asked to adopt the reasoning therein. *See e.g. Watkins v. Fibreboard Corp., et al.,* 994 F.2d 253, 258 (5th Cir.1993) (award of mental anguish damages sustained where fear of cancer based on actual exposure to asbestos); *Fibreboard Corp. v. Pool,* 813 S.W.2d 658, 675 (Tex.App.—Texarkana 1991, writ denied) (recovery for mental anguish permitted where fear of contracting cancer was reasonable in light of actual exposure to asbestos), *cert. denied,* 509 U.S. 923, 113 S.Ct. 3037, 125 L.Ed.2d 724 (1993); *see also Dartez v. Fibreboard Corp.,* 765 F.2d 456, 468 (5th Cir.1985); *Gamer v. Winchester,* 110 S.W.2d 1190, 1193 (Tex.Civ.App.—Fort Worth 1937, writ dism'd) (where the court permitted recovery for mental anguish as a result of fear of contracting rabies, lockjaw and blood poisoning following a dog attack where actual bodily injury is shown to have occurred). A common thread running through these cases is reflected in the requirement that the alleged fear be a reasonable one, that it find its origin in actual

**9.** In *Gibson,* 822 S.W.2d 95, suit was brought under the Texas Wrongful Death Act, TEX. CIV. PRAC. & REM.CODE ANN. § 71.002 (Vernon 1986) and the Survival Statute, TEX. CIV. PRAC. & REM. CODE ANN. § 71.021 (Vernon 1986) for death from AIDS-related complications brought about by the

transfusion of AIDS contaminated blood. Because exposure and subsequent fear were not in issue, the holding does not assist us in the present case. *See also Longoria v. McAllen Methodist Hosp.,* 771 S.W.2d 663 (Tex.App.—Corpus Christi 1989, writ denied).

exposure to a substance or condition capable of causing the feared disease or malady.

Other jurisdictions have squarely addressed the issue before us with varying results. The vast majority, however, have required that the plaintiff establish that he or she was actually exposed to HIV and that the fear be reasonable and based on the knowledge of exposure. *See e.g., Sterling v. Velsicol Chem. Corp.,* 855 F.2d 1188, 1206 (6th Cir.1988) (reasonable apprehension of the harmful effects as a result of consuming contaminated water over an eight month period); *Burk v. Sage Products, Inc.,* 747 F.Supp. 285, 288 (E.D.Pa.1990) (plaintiff required to show that needle that struck his finger had actually been used on an AIDS patient before recovery for emotional distress founded on reasonable fear of contracting AIDS allowed); *Brzoska v. Olson,* 668 A.2d 1355, 1363–64 (Del.1995)(en banc) (patient treated by HIV infected dentist denied recovery for fear of contracting HIV in absence of proof of actual exposure to virus during course of treatment); *K.A.C., et al. v. Benson, et al.,* 527 N.W.2d 553, 560 (Minn.1995) (patient operated on by HIV infected surgeon with open sores on his hands denied recovery for fear of contracting AIDS in absence of proof of actual exposure to HIV); *Hare v. State,* 173 A.D.2d 523, 570 N.Y.S.2d 125, 127 (1991) (x-ray technician denied recovery for emotional damages arising from fear of contracting AIDS when he failed to demonstrate that hospital inmate that bit him was actually infected with AIDS); *Ordway v. County of Suffolk,* 154 Misc.2d 269, 583 N.Y.S.2d 1014, 1017 (Sup.Ct.1992) (surgeon who unknowingly operated on AIDS infected patient denied recovery for emotional damages arising from fear of contracting AIDS where he failed to show direct exposure to his person during the operation); *Doe v. Doe,* 136 Misc.2d 1015, 519 N.Y.S.2d 595, 599 (Sup.Ct.1987) (wife seeking divorce denied recovery for emotional damages based on her fear of contracting AIDS following husband's extramarital affair where wife's fear based on pure speculation); *Johnson v. West Virginia Univ. Hosps., Inc.,*

186 W.Va. 648, 413 S.E.2d 889, 893 (1991) (hospital security guard bitten by AIDS patient allowed recovery for reasonable fear of contracting AIDS where actual exposure demonstrated even though subsequent tests proved negative).

Other cases making direct exposure to the disease causing agent an indispensable requisite of the fear's reasonableness are represented by the holdings in *Doe v. Surgicare of Joliet, Inc.,* 268 Ill.App.3d 793, 205 Ill.Dec. 593, 597, 643 N.E.2d 1200, 1204 (1994); *Vallery v. Southern Baptist Hosp.,* 630 So.2d 861, 867 (La.Ct.App.1993); *Madrid v. Lincoln County Medical Ctr.,* 121 N.M. 133, 909 P.2d 14 (App.1995) (cert.granted); *Seimon v. Becton Dickinson & Co.,* 91 Ohio App.3d 323, 632 N.E.2d 603, 604 (1993); *Carroll v. Sisters of Saint Francis Health Serv., Inc.,* 868 S.W.2d 585, 594 (Tenn.1993).

A few jurisdictions do not require actual exposure to the disease causing agent. It is sufficient, they say, if the fear is a reasonable one, with the question of reasonableness being left to the trier of fact. *See Faya v. Almaraz,* 329 Md. 435, 620 A.2d 327, 339 (1993);[10] *Castro v. New York Life Ins. Co.,* 153 Misc.2d 1, 588 N.Y.S.2d 695, 697 (Sup.Ct. 1991).[11]

At least two courts have devised a different approach requiring that the plaintiff prove an "actual injury," that is, that the plaintiff prove he or she has actually contracted HIV as a result of the incident. *See Poole v. Alpha Therapeutic Corp.,* 698 F.Supp. 1367, 1372 (N.D.Ill.1988); *Transamerica Ins. Co. v. Doe,* 173 Ariz. 112, 840 P.2d 288, 291 (App.1992).

▇ We believe that the better approach is one that requires that fear of contracting HIV and AIDS, such as will support an award for mental anguish, should be reasonably based upon circumstances showing actual exposure to the disease causing agent. *See Casarez v. NME Hospitals, Inc.,* 883

10. The holding of the Tennessee Court of Appeals, relied upon by the Maryland Court of Appeals was later reversed by the Supreme Court of Tennessee in *Carroll,* 868 S.W.2d at 592.

11. The holding in *Castro* is in conflict with holdings by other New York courts. *See e.g. Tischler v. Dimenna,* 160 Misc.2d 525, 609 N.Y.S.2d 1002, 1009 (Sup.Ct.1994).

S.W.2d 360, 366 (Tex.App.—El Paso 1994, writ dism'd by agr.)(obiter dictum).

This requirement falls in line with existing Texas law addressing fear of contracting other diseases such as cancer and rabies. *See Fibreboard Corp.*, 813 S.W.2d at 675; *Gamer*, 110 S.W.2d at 1193.

In the absence of some proof of actual exposure to HIV or AIDS, we hold that any fear of contracting HIV or AIDS is, as a matter of law, unreasonable.

Baptist's summary judgment evidence conclusively established that Drury was never exposed to HIV as a result of receiving the banked blood. Accordingly, Drury's fear of contracting HIV or AIDS, in the absence of proof of actual exposure to the virus, is unreasonable, rendering the only element of injuries claimed by Drury negated. Because Baptist has shown conclusively that there is no genuine issue of fact as to at least one essential element of Drury's negligence claim, the injury claim, the trial court correctly granted summary judgment as to Drury's first cause of action. *Gibbs*, 450 S.W.2d at 828.

## THE DTPA AND IMPLIED WARRANTY CLAIMS

Section 12.01(a) of the Medical Liability and Insurance Improvement Act provides in relevant part:

> Notwithstanding any other law, no provisions of Sections 17.41–17.63, Business & Commerce Code [DTPA], shall apply to physicians or health care providers as defined in Section 1.03(3) of this Act, with respect to claims for damages for personal injury or death resulting, or alleged to have resulted, from negligence on the part of any physician or health care provider.

> Tex.Rev.Civ. Stat. Ann. art. 4590i § 12.01(a) (Vernon Supp.1996).

Section 77.003, Civil Practice and Remedies Code provides:

§ 77.003. Limitation of Liability

(a) A person who donates, obtains, prepares, transplants, injects, transfuses, or transfers a human body part from a living or dead human to another human or a person who assists or participates in that activity is not liable as a result of that activity except for negligence, gross negligence, or an intentional tort.

(b) The Deceptive Trade Practices–Consumer Protection Acts (Subchapter E, Chapter 17, Business & Commerce Code) does not apply with respect to claims for damages for personal injury or death resulting or alleged to have resulted from negligence on the part of the person described in Subsection (a) of this section in connection with an activity designated in said subsection.

(c) the implied warranties of merchantability and fitness do not apply to the furnishing of human body parts by blood banks, tissue banks, or other similar organizations. For purposes of this chapter, those human body parts are not considered commodities subject to sale or barter.

In *Sorokolit v. Rhodes*, 889 S.W.2d 239 (Tex.1994), the Supreme Court addressed the applicability of the DTPA to claims against physicians and health care providers for damages for personal injuries or death. The court made it clear that a DTPA claim was not permissible if the damages sought are for injuries or death resulting from, or alleged to have resulted from, the physician or health provider's negligence. *Id.* at 241.

However, the court recognized that Section 12.01(a) of the Medical Liability and Insurance Improvement Act only precludes suits for negligence, that is, suits founded on a breach of the accepted standard of medical care. *Id.* at 242. Therefore, the court concluded, if the alleged DTPA claim is not based on the physician's breach of the accepted standard of medical care, section 12.01(a) does not preclude a suit for violation of the DTPA. Thus, the underlying nature of the claim determines whether section 12.01(a) prevents suit for violation of the DTPA.[12] *Id.* at 242.

12. In *Sorokolit*, the plaintiff alleged "knowing" misrepresentations and "knowing" breach of an express warranty. The court interpreted the claims as focusing on intentional deception and intentional breach of express guarantees. Averring that the violations were "knowingly" done was viewed as controlling. *Sorokolit*, 889 S.W.2d at 241.

The court further warned that claims that a physician or health care provider was negligent may not be recast as DTPA actions to avoid the standards set forth in the Medical Liability and Insurance Improvement Act. *Id.* at 242.

In *Jeffery v. Walden,* 899 S.W.2d 207 (Tex. App.—Dallas 1993), *rev'd,* 907 S.W.2d 446 (Tex.1995), the court of appeals gave approval to pleadings alleging DTPA violations against a dentist arising from his providing an improperly fitted pair of dentures. Without mentioning *Sorokolit,* the court placed great reliance upon the holding in *Chapman v. Paul R. Wilson, Jr., DDS, Inc.,* 826 S.W.2d 214 (Tex.App.—Austin 1992, writ denied) and undue emphasis on the use of the word "knowingly" as alleged in *Jeffery's* pleadings. *Jeffery,* 899 S.W.2d at 211.

The Supreme Court, in somewhat of a departure from its position in *Sorokolit* and definitely in a retreat from its holding therein, reversed the court of appeals observing that the pleadings, in spite of alleging "knowing" violations, simply sought to recast a negligence claim as a DTPA claim. *Walden v. Jeffery,* 907 S.W.2d 446, 448 (Tex.1995) (per curiam).[13] Thus, it is clear that, in analyzing the underlying nature of the claim, the use of the terms "knowing" or "knowingly" will not necessarily be determinative of the character of the claim.

■ A fair reading of Drury's petition reveals that the alleged DTPA violations all arise from an alleged breach of an agreement for rendition of medical services, that is, that the DTPA violations arise from the administering of blood contrary to a previous agreement.[14] Baptist's summary judgment

evidence includes the previously mentioned consent form that authorized deviation from previous agreements according to professional judgment to be exercised as the need arose.

The transfusion of blood did not involve the marketing of same but rather constituted an inseparable part of the medical services rendered in performing the scheduled hysterectomy.[15] Thus an allegation that Baptist breached an agreement to render medical services in a particular manner is no different than alleging that Baptist has breached the accepted standard of medical care.

Drury's DTPA pleadings are nothing more than an attempt to recast her negligence claim as a DTPA action, which section 12.01(a) of the Medical Liability and Insurance Improvement Act prohibits. *Cf. Viviano v. Moore,* 899 S.W.2d 326, 327–28 (Tex. App.—Houston [14th Dist.] 1995, writ denied).

Moreover, Section 77.003(b), Tex. Civ. Prac. & Rem.Code Ann. specifically prohibits DTPA claims for personal injury or death resulting from the negligence on the part of health care providers engaged in the transfusion of blood. The trial court correctly granted summary judgment on Drury's laundry list of DTPA claims.

Not much is said by Drury regarding her claim for breach of implied warranty, either in her petition, her response to Baptist's motion for summary judgment or in her appellate brief. Assuming, without deciding, that her contention on appeal is reviewable under the appropriate briefing requirements (see Tex.R.App. P. 74) nevertheless, it is ap-

---

**13.** In another opinion handed down the same day, the Supreme Court in *Gormley v. Stover,* 907 S.W.2d 448 (Tex.1995) (per curiam) once again examined the underlying nature of the claims being made and determined that averring that conduct was done "knowingly" does not, ipso facto, bring the claim within the ambit of the DTPA and outside the prohibition of the Texas Medical Liability and Insurance Improvement Act. *See Gormley,* 907 S.W.2d at 450 (reversing *Stover v. Gormley,* 883 S.W.2d 278, 283–284 (Tex. App.—Amarillo 1994)).

**14.** Drury's petition does not allege that any of the DTPA violations were committed "knowingly,"

rather a fair reading of the petition as a whole supports the conclusion that negligence is the dominant theme of the complaints. Even though misrepresentations are alleged, misrepresentations may also be made negligently. *See Chapman,* 826 S.W.2d at 219 (citing cases with similar holding).

**15.** Further, the Texas Uniform Commercial Code provides that blood is not a product or commodity subject to sale or barter, but a medical service. *See* Tex. Bus. & Comm.Code Ann. § 2.316(e) (Vernon 1994); *Gibson,* 822 S.W.2d at 102.

parent that she intended to bring her implied warranty claim under the DTPA.

■ For the first time, Drury informs us, in her appellate brief, that she is referring to the implied warranty of workmanlike performance. Such a warranty is not a creature of the DTPA nor of the Texas Business and Commerce Code. *See* TEX. BUS. & COM. CODE ANN. § 2.312 (warranty of title), § 2.314 (warranty of merchantability), § 2.315 (warranty of fitness for a particular purpose) (Vernon 1994). The DTPA does not create warranties, it only enforces those that are either creatures by statute or those recognized by the common law. *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 438 (Tex. 1995).

The implied warranty of workmanlike performance was rejected by the supreme court in a medical service setting in *Dennis v. Allison*, 698 S.W.2d 94, 96 (Tex.1985) and, although recognized as a creature of the common law in a limited sense in *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 352 (Tex.1987) (implied warranty of services to remedy defects), it has never been imposed in a professional services setting involving the exercise of professional judgment.

■ Even if the implied warranty were recognized, Drury was required to offer proof that Baptist failed to provide professional services in a good and workmanlike manner through expert testimony. *Chapman*, 826 S.W.2d at 218.

Drury made no such tender of evidence in her response to Baptist's motion for summary judgment. On the contrary, Baptist, through Dr. Theis, established that:

> There was no error in the type of blood that was given or in the blood testing or in the way it was administered. It was simply given in a way that it would routinely and appropriately be given in a hospital setting if I ordered for a patient to receive blood and they did not have donor-directed blood available.

> It was appropriately transfused in accordance with normal blood banking procedures.

Without the required expert testimony, there was no way for Drury to prove that Baptist had breached an implied warranty of workmanlike performance. *Cf. Chapman*, 826 S.W.2d at 218.

Summary judgment may be based on uncontroverted testimonial evidence of an interested witness, or of an expert witness, as to subject matter concerning which the trier of fact must be guided solely by the opinion testimony of experts, if the evidence is clear, positive, and direct, otherwise credible and free from contradiction and inconsistencies and capable of being readily controverted. *Garza v. Levin*, 769 S.W.2d 644, 645 (Tex. App.—Corpus Christi 1989, writ denied).

Additionally, we note that the same claim being raised by Drury was rejected in *Chapman*, 826 S.W.2d at 217–18. We agree with the sound reasoning of the Austin Court of Appeals and, adhering to its holding, we overrule Drury's contention that such a claim is viable under the DTPA.

In conclusion, we hold that Baptist conclusively negated an essential element of Drury's negligence claim, the existence of a legally compensable injury, and that it demonstrated, as a matter of law, that Drury's theories of recovery under the DTPA, including the implied warranty theory, were barred. The trial court correctly granted summary judgment and we affirm the judgment in all respects.