NUMBER 13-99-489-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


____________________________________________________________________


JAMES FRED HINOTE, Appellant,


v.



RIO GRANDE SURGERY CENTER ASSOCIATES, L.L.P.

AND CRAIG KATSHEN, Appellees.

____________________________________________________________________


On appeal from the 275th District Court of Hidalgo County,

Texas.

____________________________________________________________________


O P I N I O N



Before Justices Hinojosa, Chavez, and Rodriguez


Opinion by Justice Hinojosa



 Appellant, James Hinote, appeals from a summary judgment
granted in favor of appellees, Rio Grande Surgery Center Associates,
L.L.P. ("Surgery Center") and its employee Craig Katshen ("Katshen"),
whom he had sued for medical malpractice. By a single issue (with five
sub-issues), appellant contends the trial court erred in granting
appellees' motion for summary judgment because: (A) the motion for
summary judgment addressed only appellant's recovery of damages for
mental anguish caused by fear of disease, whereas his fifth amended
petition raised other damages and another cause of action; (B)
appellant's summary judgment evidence creates a question of fact as
to whether he was exposed to a substance or condition capable of
causing disease; (C) appellant "should prevail even when using the
standard for recovery set forth in the Drury case;"(1) (D) there is no case
law regarding the elements a plaintiff must prove to recover damages
for mental anguish due to fear of disease; and (E) appellant can recover
such damages because they arose as a result of a breach of a duty
arising out of a special relationship between appellant and appellees. 
We affirm in part and reverse and remand in part.

A. Jurisdiction

 In sub-issue A, appellant contends the trial court's order granting
summary judgment is interlocutory because it does not dispose of all
his claims. Under Texas procedure, appeals are allowed only from final
orders or judgments. Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266, 272
(Tex. 1992); North East Indep. Sch. Dist. v. Aldridge, 400 S.W.2d 893,
895 (Tex. 1966). However, the supreme court has held that:

If a summary judgment order appears to be final, as
evidenced by the inclusion of language purporting to dispose
of all claims or parties, the judgment should be treated as
final for purposes of appeal. If the judgment grants more
relief than requested, it should be reversed and remanded,
but not dismissed.


Mafrige v. Ross, 866 S.W.2d 590, 592 (Tex. 1993).

 The trial court's order in this case states:

The Court, after reviewing the Motion, any response thereto,
and the evidence presented, believes the Motion to be well-taken and should be in all things GRANTED.


 It is, therefore, ORDERED, ADJUDGED, and DECREED
that the Plaintiff take nothing against these Defendants; that
all claims and causes of action asserted against these
Defendants be dismissed with prejudice to refiling same; and
that Plaintiff be prohibited from bringing further actions
against these Defendants as a result of the occurrence made
the basis of this lawsuit

 

The trial court's order clearly evidences the court's intent to dispose of
all parties and claims. We hold the trial court's order is final for
purposes of appeal and that we have jurisdiction to review this matter.

B. Standard of Review


 When we review a traditional summary judgment brought under
Texas Rule of Civil Procedure 166a, we must follow these well-established rules:

(1) the movant has the burden of showing that there is no
genuine issue of material fact and that it is entitled to
judgment as a matter of law;

 

(2) in deciding whether there is a disputed material fact
issue precluding summary judgment, evidence
favorable to the nonmovant will be taken as true; and

 

(3) every reasonable inference must be indulged in favor of
the nonmovant and any doubts must be resolved in
favor of the nonmovant.


See American Tobacco Co., Inc. v. Grinnell, 951 S.W.2d 420, 425 (Tex.
1997); Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985); see also Tex. R. Civ. P. 166a. A defendant's motion for
summary judgment should be granted if he disproves at least one
essential element of each of the plaintiff's causes of action, or if he
establishes all the elements of an affirmative defense as a matter of law. 
Grinnell, 951 S.W.2d at 425; Science Spectrum, Inc. v. Martinez, 941
S.W.2d 910, 911 (Tex. 1997). We review the evidence in the light most
favorable to the respondent against whom the summary judgment was
rendered, disregarding all contrary evidence and inferences. Merrell
Dow Pharm., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997); Zapata,
997 S.W.2d at 747; Connell v. Connell, 889 S.W.2d 534, 537 (Tex.
App.--San Antonio 1994, writ denied). Evidence favoring the movant's
position will not be considered unless it is uncontradicted. Great Am.
Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41,
47 (Tex. 1965). If a summary judgment is granted generally, without
specifying the reason, it will be upheld if any ground in the motion for
summary judgment can be sustained. Carr v. Brasher, 776 S.W.2d
567, 569 (Tex. 1989); Weakly v. East, 900 S.W.2d 755, 758 (Tex.
App.--Corpus Christi 1995, writ denied); Benavides v. Moore, 848
S.W.2d 190, 192 (Tex. App.--Corpus Christi 1992, writ denied). 

C. Background and Procedural History


 Viewed in the light most favorable to appellant, the party against
whom the summary judgment was granted, the underlying facts are as
follows. On March 22, 1996, appellant went to the Surgery Center to
undergo a cataract operation. While being prepared for the operation,
he was placed in a room with one other patient, known to appellant
only as "Mr. Garcia;" they were separated by a curtain. Appellant
overheard Garcia say that he was positive for Hepatitis C. Nurse
Katshen rolled the cart containing appellant's anesthesia kit out of the
room; appellant's wife saw him take it over to where Garcia was
located. An anesthesia kit contains two syringes: a 3 cc syringe (which
holds 2 cc's of medication) and a 5 cc syringe. A 5 cc syringe is used
to draw 1 cc of Verced, then 4 cc of saline; this mixture is put into the
patient's IV. Dr. Bharat N. Vadher, the anesthesiologist, used a syringe
from the kit to inject a relaxant into appellant's IV. Dr. Gillett then
performed an "eye block" on appellant, using two syringes injected into
or near appellant's eye prior to performing the cataract operation.

 While appellant was resting in a post-operative room after the
surgery, either Janet West, the administrator of the Surgery Center, or
Dr. Gillett told him, "We have some bad news for you." Appellant
immediately felt very upset, thinking he had lost sight in the eye that
had just been operated on. Dr. Gillett told him, "No, it's not that. Calm
down. . . you were injected with infected needles." Appellant was then
informed that the anesthesia kit used during his surgery might have
been used on another patient before being used on appellant. Appellant
asked if the other patient was the man who said he was positive for
hepatitis C, and Dr. Vadher replied that it was. Dr. Vadher told him the
needle used to inject the tranquilizer into appellant's IV and the two
needles used in the eye block were all previously used on the other
patient. Ms. West told him she would give appellant "a report of what
happened," and that appellant would have to take an AIDS test. 
Appellant never obtained such a report from the Surgery Center. 

 Dr. Michael T. Jelinek, an infectious disease specialist, was then
called. Appellant had previously seen Dr. Jelinek for an infection. Dr.
Jelinek told appellant that his chances of getting hepatitis C through an
IV were minimal "because of the flow. But through my eye, he couldn't
say." Appellant was reassured by this. Dr. Jelinek did not say anything
about his chances of contracting AIDS.

 The Surgery Center tested appellant's blood for hepatitis C,
hepatitis B, and HIV. Thirty days later, appellant was told by the
Surgery Center that the results were negative. In the meantime,
appellant retained an attorney, who referred him to a Dr. Samaniego for
further testing. Appellant concedes he has been tested repeatedly for
hepatitis C, hepatitis B and HIV, and the results have been negative for
all three diseases. He alleges serious and permanent mental anguish
injuries sustained due to the fear of disease caused by appellees'
negligent use of unsterile syringes, injuries sustained due to the
negligent manner in which he was informed of the mistake, and past
and future medical expenses.

 Appellant filed his original petition on June 13, 1997.(2) Appellees
filed their first amended motion for summary judgment on October 1,
1998, and it was submitted to the trial court on December 10, 1998. 
Appellant timely filed his fifth amended petition on December 1, 1998,
and his response to appellees' motion for summary judgment, with
attached exhibits, on December 3, 1998. The trial court signed an order
granting the motion for summary judgment on May 4, 1999.

D. Appellant's Third Amended Petition


1. Causes of Action Pleaded


 In his third amended petition, appellant alleged the Surgery Center
was negligent in the following ways:

a. In failing to properly train or supervise its employees in
the preparation and identification and proper use of
patients' pre-operative trays;


b. In failing to properly train or supervise its employees in
the proper method of disposing of used syringes so as
to prevent the syringes from being used on other
patients; and


c. In failing to have a procedures and policies guide in
effect which instructs employees on how to properly
handle and dispose of syringes and/or other hazardous
or contaminated waste products.


Appellant further alleged that nurse Katshen was negligent:

a. In failing to exercise the accepted standard of care
regarding the use and re-use of syringes which had
been previously used on another patient;


b. In transporting the supply tray containing already
previously used syringes of another patient to
appellant's bedside; and


c. In failing to apprise the physicians who were treating
appellant of the fact that the syringe kit which
contained the previously used syringes belonged to
another patient.


Appellant also alleged that Katshen was acting within the course and
scope of his employment with the Surgery Center, and that the Surgery
Center was responsible for Katshen's actions under the doctrine of
respondeat superior.

(2) Damages Pleaded


 In his third amended petition, appellant claimed the following
damages:

As a result of the negligent conduct of [appellees], JAMES
FRED HINOTE hereby makes a claim for damages that he
suffered as a result of injections he was administered with
the used syringes of a Hepatitis C patient. As a result of this
negligence, [appellant] suffered and continues to suffer
severe mental injuries, physical injuries and reasonable fear
of contracting the diseases and conditions he may have been
exposed to as a result of the contaminated syringes which
were used to administer him injections. The injuries are of
a permanent nature and have had a serious effect on the
physical and emotional well-being of [appellant, who] has
endured physical injuries including nausea, headaches and
dizziness and resulting mental anguish. In addition,
[appellant] will not truly know the full extent of his damages
and injuries he may have sustained until such time that
discovery in this case is concluded. . . . [appellant] incurred
reasonable and necessary medical expenses for treatment of
the injuries he sustained and in all likelihood will continue to
incur such expenses in the future. [Appellant] now sues for
his past and future medical expenses, past and future pain
and suffering and severe mental anguish in the amount of
Five Hundred Thousand ($500,000) Dollars. 


E. Appellees' First Amended Motion for Summary Judgment


 In their first amended motion for summary judgment, appellees
attacked the damages element of appellant's negligence claim. They
asserted that appellant's claims for serious and permanent injuries and
damages must fail as a matter of law because Texas courts have found
that actual exposure to a disease is necessary in order to recover for
mental anguish due to fear of contracting a disease. As summary
judgment evidence, appellees attached:

 (1) A copy of appellant's "Third Amended Original Petition,"(3)

 (2) An affidavit of Dr. Michael T. Jelinek, and

 (3) A portion of appellant's deposition.

 In his affidavit, Dr. Jelinek stated:

 On March 22, 1996, I was consulted regarding James
Hinote. I was asked to consult on Mr. Hinote's case because
there was concern he had possibly been injected with a
syringe which had possibly been used on another patient. 
That patient, patient "B", allegedly had reported a history of
having been exposed to Hepatitis C. I spoke with Mr. Hinote
and then ordered Mr. Hinote's blood to be drawn and tested
for a HIV-1/HIV-2 AB screen, Hepatitis B Surf AG and
Hepatitis C AB screen. I received the results of those test
which were all negative.


 On March 22, 1996, I additionally recommended that
these same tests should be run on the other patient, patient
"B", to ensure Mr. Hinote was not exposed to HIV or
Hepatitis. I have also reviewed the results of those tests
which indicate the other patient's HIV and Hepatitis screens
were all negative.


 Further, it is my understanding from reviewing Mr.
Hinote's deposition that he has had two (2) additional
Hepatitis screens since March, 1996, which were also
negative.


 Accordingly, it is my opinion that it is medically certain,
Mr. Hinote was not exposed to either HIV, Hepatitis B or
Hepatitis C. In other words, it is medically certain Mr. Hinote
did not sustain any injury if indeed he was injected with
syringes that had been used on the other patient.


 In his deposition, appellant testified Dr. Samaniego told him that
he could likely receive hepatitis "from the injections in the eye, the
needles, the two shots they gave me in the eye." The results of the
hepatitis testing performed by Dr. Samaniego were negative. The
doctor gave him some "pills to take for calmness, you know, so I
wouldn't be too excited. To calm me down . . . a tranquilizer." 
Appellant took the pills for two or three months. Appellant further
testified:

Q: Were you having any anxiety when you went to see
[Dr. Samaniego]?


A: I was nervous over the whole deal, from the very
beginning.


Q: What kind of symptoms were you having?


A: Just nerves. Felt like I was burning inside. Can't
sleep.


Q: Anything else?


A: No.


Q: How were those symptoms by your second visit in
May of 1996, when you went to see Dr. Samaniego?


A: The medications that he gave me helped me.


Q: Okay.


A: But what worried me when they gave me the HIV test,
I didn't know what, whether the guy had HIV or not,
the patient. In the back of my mind I was always
thinking about that.


 Appellees asserted they were "entitled to summary judgment as
a matter of law on all claims and causes of action of the Plaintiff."

F. Appellant's Fifth Amended Petition


1. Causes of Action Pleaded


 In his fifth amended petition, appellant alleged two additional
ways in which the Surgery Center was negligent:

d. In failing to exercise standard [of] care in regard to the
way and method it responded to and informed Plaintiff
of the mistake that had occurred regarding the syringes
in that such method created shock, panic and hysteria;
and


e. By using unsterile syringes to treat Plaintiff without his
consent to do so.


Appellant deleted one of the ways in which he previously alleged nurse
Katshen was negligent:

b. In transporting the supply tray containing already
previously used syringes of another patient to
appellant's bedside.


2. Damages Pleaded


 In his fifth amended petition, appellant pleaded the following
damages:

[Appellant]. . . suffered and continues to suffer severe
physical injuries as a proximate cause of the negligent acts
described above. In addition to those injuries, he has had
and continues to have a reasonable fear of contracting the
diseases and conditions he may have been exposed to as a
result of the contaminated syringes which were used to
administer his injections. The injuries are of a permanent
nature and have had a serious effect on the physical and
emotional well-being of [appellant, who] has sustained
physical injuries including nausea, headaches and dizziness,
anxiety, pain and suffering and resulting mental anguish. .
. . [Appellant] incurred reasonable and necessary medical
expenses for treatment of the injuries he sustained and in all
likelihood will continue to incur such expenses in the future. 
[Appellant] now sues for his past and future medical
expenses, past and future pain and suffering and severe
mental anguish.





G. Appellant's Response to the Motion for Summary Judgment


 In his response, appellant objected to the use of Dr. Jelinek's
affidavit as summary judgment evidence, arguing that the doctor's
comments regarding test results on appellant and "patient B" were
hearsay not subject to any known hearsay exceptions. He noted that
Dr. Jelinek did not personally perform the testing, but was merely
repeating the out-of-court statements of others; that Dr. Jelinek never
even examined appellant; and that the actual test results were not
offered as evidence. However, because appellant failed to obtain a
ruling on his objection, he has not preserved this issue for our review. 
Tex. R. App. P. 33.1. 

 Appellant further argued that the motion was based on a prior
pleading, and that he had amended his pleadings by filing his Fifth
Amended Original Petition. Appellant further argued that his cause of
action was not only for appellees' negligent act of using unsterile
syringes on appellant, but also for the "improperly and negligently
provided treatment after the mistake was discovered which fell below
an appropriate standard of care and caused shock, panic, apprehension
and additional stress to a patient who had just come out of an operating
room." Appellant noted that appellees' motion for summary judgment
was incorrectly premised on the assumption that his only claim was for
fear of exposure to disease, while in fact appellant had also alleged
damages for "physical injuries and symptoms," pain and suffering,
medical expenses and for "improperly and negligently provid[ing]
treatment after the mistake." Appellees did not amend their motion for
summary judgment, or otherwise reply to appellant's response.

H. Appellant's Summary Judgment Evidence


 Appellant attached the following evidence to his response:

 1. A portion of Dr. Bharat N. Vadher's deposition;

 2. A portion of the deposition of Craig Katshen;

 3. A portion of the deposition of Janet West; and

 4. The entire deposition of appellant.

 In his deposition, Dr. Vadher acknowledged that the following
notation in appellant's medical record was made by him:

Anesthesia record in outpatient area. Patient was given one
cc of Versed, and one point five cc of Fentyl from a kit
assigned (7158) to him. And the syringes . . . were filled up
as it usually does. Upon asking the attending nurse whether
the kit (narcotic kit) belongs to this particular patient, he said
yes. The medicine was given from the syringes to this
patient. It was found later on that the same kit (7158) was
assigned to another patient who is positive for hepatitis C. 
Patient is informed about the incidence. Dr. Jelinek was
contacted on phone by me and according to him the chances
of transmittal of hepatitis C is minimal. And According to
him there is no proven value of gamma globulin prophylaxis. 
He said that there is no emergency to see the patient and he
will see him on Monday for reassurance. Dr. Gillett was
informed about this incidence and he will follow up this
case. Dr. Jelinek also spoke to patient in step down and
reassured the patient. Janet was informed about the
incidence. Blood work has been sent to lab. Patient was
also reassured and told about small chances of transmitting
of the disease.


Dr. Vadher testified he did not recall whether he got the information that
the other patient was positive for hepatitis C from the patient himself,
the patient's chart or the nursing staff. A copy of this portion of
appellant's medical records was attached as an exhibit to Dr. Vadher's
deposition.

 Katshen testified that he heard the other patient say he was
positive for hepatitis C. He also heard the other patient tell Dr. Vadher
he was positive for hepatitis C. He specifically remembers this because
"it kind of stands out . . . it's not a disease you want to get."

 Janet West testified that "because of the medications [appellant]
was receiving," only the syringe used to inject the relaxant into
appellant's IV port could have previously been used on the other
patient, not the two needles used by Dr. Gillett to perform the eye block.

 Appellant testified to the facts as set forth above.

I. Recovery for Fear of Disease


 The sole theory relied on by appellees in their motion for summary
judgment is that as a matter of law appellant cannot recover the
damages he has asked for in his pleadings because he was not exposed
to any infectious disease through appellees' use of contaminated
needles. Appellees contend there must be actual exposure to a disease-causing agent in order to recover for mental anguish caused by fear of
disease. We hold the summary judgment proof establishes that
appellant has not contracted hepatitis C, hepatitis B or HIV. In fact,
appellant conceded during oral argument that he has not contracted
hepatitis C, hepatitis B or HIV. The issue before us is whether this fact
is dispositive of appellant's claim for mental anguish damages.

1. What Standards Apply to this Case?
 

 In sub-issue D, appellant asserts that no standards regarding
recovery of mental anguish for fear of disease have been promulgated
by the Texas Supreme Court or by this Court. In sub-issue C, appellant
contends that the granting of the motion for summary judgment was
improper, even under the standards set forth in Drury v. Baptist Mem.
Hosp. Sys., 933 S.W.2d 668, 673-75 (Tex. App.--San Antonio 1996,
writ denied). In Drury, the San Antonio court of appeals held that:

fear of contracting HIV and AIDS, such as will support an
award for mental anguish, should be reasonably based upon
circumstances showing actual exposure to the disease
causing agent.


Id. at 674. The Drury court further held that the plaintiff's fear of
contracting HIV from banked blood was not reasonable where summary
judgment evidence established that the blood had been tested and
shown to be free of HIV. Because the plaintiff had not been exposed to
HIV, her fear of contracting HIV was, therefore, not reasonable.

 Appellant interprets Drury to mean that if his fear of contracting
a disease under these circumstances is reasonable, he should be
allowed to recover damages for mental anguish for being exposed to
disease. However, a recent Texas Supreme Court case addressed a
similar problem and rejected this theory.

 Appellees in this case relied heavily on Temple-Inland Products
Corp. v. Carter, 993 S.W.2d 88 (Tex. 1999), in their brief and at oral
argument. We note that Carter was handed down by the supreme
court after appellees' motion for summary judgment was granted. In
Carter, the plaintiffs, Carter and Wilson, were employees of an
independent contractor hired by Temple-Inland to drill holes in
laboratory countertops to install electrical outlets. Carter, 993 S.W.2d
at 89. The plaintiffs did not know, and were not initially told by
Temple-Inland, that the countertops and the dust produced by the
drilling contained asbestos fibers. Id. Carter and Wilson did not wear
any kind of protective gear during their work. Id. Carter worked from
four to six weeks and Wilson worked two weeks before the laboratory
manager warned them of the asbestos. Id. Carter and Wilson then
stopped work on the project. Id.

 Carter and Wilson sued Temple-Inland for mental anguish
damages because it negligently exposed them to asbestos fibers. Id. 
Their expert witness, Dr. Jenkins, testified that neither Carter nor
Wilson had any asbestos-related disease. Carter, 993 S.W.2d at 89-90. 
Carter complained of shortness of breath upon exertion, but his lung x-rays were normal. Carter, 993 S.W.2d at 89. Wilson had some pleural
thickening, and also complained of shortness of breath, but his
symptoms could have been related to his obesity. Id. Dr. Jenkins did
not attribute any of their reported symptoms to their exposure to
asbestos, and agreed that the exposure was probably too recent, given
the long latent period normally associated with asbestos-related
disease, to have caused any symptoms. Carter, 993 S.W.2d at 89-90. 
Dr. Jenkins insisted, however, that Carter and Wilson had been injured
by their exposure to asbestos and probable inhalation of asbestos
fibers. Id. He estimated their risk of developing a disease had increased
from one in 1,000,000 to about one in 500,000 for the next ten to
fifteen years, and as much as one in 100 over twenty or thirty years. 
Carter, 993 S.W.2d at 90.

 Temple-Inland moved for summary judgment on the ground that
the plaintiffs had not suffered any injury for which they could recover
mental anguish damages, arguing that their claims amounted to
nothing more than negligent infliction of emotional distress, a cause of
action that is not recognized in Texas. Id.; see Boyles v. Kerr, 855
S.W.2d 593, 597 (Tex. 1993). In reversing the decision of the
Beaumont court of appeals and upholding the trial court's granting of
summary judgment, the supreme court stated: 

it has been established for over a century that a person who
is placed in peril by the negligence of another, but who
escapes without injury, may not recover damages simply
because he has been placed in a perilous position. Nor is
mere fright the subject of damages. Absent physical injury,
the common law has not allowed recovery for negligent
infliction of emotional distress except in certain specific,
limited instances.


 There are few situations in which a claimant who is not
physically injured by the defendant's breach of a duty may
recover mental anguish damages. See, e.g., Freeman v. City
of Pasadena, 744 S.W.2d 923, 923-24 (Tex. 1988)
(bystander recovery); Silcott v. Oglesby, 721 S.W.2d 290,
292 (Tex. 1986) (intentional tort of child abduction);
Leyendecker & Assocs. v. Wechter, 683 S.W.2d 369, 374
(Tex. 1984) (defamation); Billings v. Atkinson, 489 S.W.2d
858, 860-61 (Tex. 1973) (invasion of privacy); Stuart v.
Western Union Tel. Co., 66 Tex. 580, 18 S.W. 351, 353
(failure of telegraph company to timely deliver death
message); Pat H. Foley & Co. v. Wyatt, 442 S.W.2d 904,
906-07 (Tex. App.--Houston [14th Dist.] 1969, writ ref'd)
(negligent handling of corpse).


 Whether a plaintiff can recover mental anguish
damages without physical injury "depends on both the
nature of the duty breached and the quality of proof offered
by the plaintiff. For many breaches of legal duties, even
tortious ones, the law affords no right to recover for resulting
mental anguish."


Carter, 993 S.W.2d at 91 (quoting City of Tyler v. Likes, 962 S.W.2d
489, 494-500 (Tex. 1997)). The court held that because Carter's and
Wilson's claims did not fall within any category in which such recovery
had been allowed, they could not recover mental anguish damages
absent physical injury. Carter, 993 S.W.2d at 91.

 Carter and Wilson argued alternatively that they had been injured
because there was uncontradicted summary judgment evidence they
had inhaled and were injured by asbestos fibers in the laboratory. Id. 
The supreme court held it had to assume, based on the summary
judgment evidence, that Carter and Wilson reasonably feared
developing an asbestos-related disease at some point in the future. 
Carter, 993 S.W.2d at 92. However, the court framed the issue as 
whether, under these circumstances, the plaintiffs could recover mental
anguish damages for their increased risk and reasonable fear of possibly
developing asbestos-related diseases that they did not currently have
and might never have. Id. Finding they could not, the court stated:

 While the existence of physical injury is ordinarily
necessary for recovery of mental anguish damages except in
those instances already mentioned, such injury may not be
sufficient for recovery of mental anguish damages when the
injury has not produced disease, despite a reasonable fear
that such disease will develop. As we recently observed in
. . . Likes, "[w]ithout intent or malice on the defendant's part,
serious bodily injury to the plaintiff, or a special relationship
between the two parties, we permit recovery of mental
anguish in only a few types of cases involving injuries of
such a shocking and disturbing nature that mental anguish
is a highly foreseeable result.


* * * * *
 


The difficulty in predicting whether exposure [to asbestos]
will cause any disease and if so, what disease, and the long
latency period characteristic of asbestos-related diseases,
make it very difficult for judges and juries to evaluate which
exposure claims are serious and which are not. . . . If
recovery were allowed in the absence of present disease,
individuals might feel obliged to bring suit for such recovery
prophylactically, against the possibility of future
consequences from what is now an inchoate risk. This
would exacerbate not only the multiplicity of suits but the
unpredictability of results.


 The question is not, of course, whether Carter and
Wilson have themselves suffered genuine distress over their
own exposure. We assume they have, and that their anxiety
is reasonable. The question, rather, is whether this type of
claim -- for fear of an increased risk of developing an
asbestos-related disease when no disease is presently
manifest -- should be permitted, regardless of any individual
plaintiff's circumstances, when the effort in determining the
genuineness of each claim and assuring appropriate recovery
is beset with the difficulties we have described. We
conclude that no such action should be recognized.


* * * * *



 We add this cautionary note. The principles we have
used to deny recovery of mental anguish damages for fear of
the possibility of developing a disease as a result of an
exposure to asbestos may not yield the same result when
the exposure is to some other dangerous or toxic element. 
Exposure to asbestos, a known carcinogen, is never healthy
but fortunately does not always result in disease . . . The
substantial uncertainty that exposure to asbestos will
ultimately result in disease, even though the risk of disease
is significantly increased, and the ordinarily long latency
period before disease develops counsel strongly against
compensating these types of fears. The consequences of
exposure to other toxic materials vary, and while the
analysis in other circumstances should by the same as that
which we have employed here, the outcomes may be
different.


Carter, 993 S.W.2d at 92-95 (emphasis in original).

 After performing the analysis mandated by the supreme court in
Carter, we hold that appellant's mental anguish damages are not
compensable. Appellant has repeatedly tested negative for hepatitis C,
hepatitis B and HIV. Some four years after his possible exposure to the
tainted syringes, appellant concedes that he is free of these diseases. 
To allow appellant to recover mental anguish damages for fear of
contracting diseases it is proven he has not contracted would be
against the practical and policy reasons set forth in Carter. We overrule
appellant's sub-issues C and D.

 Because we have held that appellant cannot recover mental
anguish damages for fear of a disease he has not, in fact, contracted,
it is unnecessary to address appellant's sub-issue B. See Tex. R. App.
P. 47.1.

J. Existence of a "Special Relationship" Between Appellant and

Appellees

 In sub-issue E, appellant asserts he is entitled to recover mental
anguish damages under the circumstances of this case because a
special relationship exists between him and the Surgery Center and its
employee Katshen.

 We note that the notion of recovery of mental anguish damages
as a result of the breach of a duty arising out of a special relationship
predates both this summary judgment and the Carter opinion. See,
e.g., Likes, 962 S.W.2d at 496 (acknowledging that mental anguish may
be compensable as the foreseeable result of a breach of duty arising out
of certain special relationships); Boyles, 855 S.W.2d at 600 (same).
However, appellant did not plead such a relationship in his Fifth
Amended Original Petition, nor did he raise this issue in his response to
appellees' motion for summary judgment or submit any summary
judgment evidence on this issue. Once the movant establishes his
right to summary judgment as a matter of law, the burden shifts to the
nonmovant to offer any issue or evidence that would preclude summary
judgment. City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671,
678 (Tex. 1979). Issues not expressly presented to the trial court by
written motion, answer or other response shall not be considered on
appeal as grounds for reversal. Tex. R. Civ. P. 166a(c); see also Tex. R.
App. P. 33.1. We overrule appellant's sub-issue E.

K. Did the Summary Judgment Dispose


Of All Causes of Action and Damages Pleaded?



 In sub-issue A, appellant contends the summary judgment did not
dispose of all his claims. In his timely-filed Fifth Amended Original
Petition, appellant asserted an additional cause of action for damages
he received as a result of appellees' failure "to exercise the standard [of]
care in regard to the way and method it responded to and informed
Plaintiff of the mistake that had occurred regarding the syringes in that
such method created shock, panic and hysteria." We hold this claim
was not addressed in appellees' motion for summary judgment and,
therefore, was not encompassed by the order granting summary
judgment. See Science Spectrum, Inc. v. Martinez, 941 S.W.2d 910,
912 (Tex. 1997) (trial court cannot grant a summary judgment for more
relief than was requested in the motion); Golden Triangle Energy v.
Wickes Lumber, 725 S.W.2d 439, 441 (Tex. App.--Beaumont 1987, no
writ) (if a ground that may support summary judgment is not stated in
the motion, the ground cannot be supplied by a prayer for general
relief); Stiles v. RTC, 867 S.W.2d 24, 26 (Tex. 1993) (on appeal,
summary judgment cannot be affirmed on a ground not presented to
the trial court in the motion).

 We sustain sub-issue A as it relates to appellant's claim for
damages he received as a result of appellees' failure "to exercise the
standard [of] care in regard to the way and method it responded to and
informed Plaintiff of the mistake that had occurred regarding the
syringes in that such method created shock, panic and hysteria."

 Furthermore, the record reflects appellant pleaded damages other
than mental anguish damages caused by fear of disease. Appellant
claimed past and future medical expenses and past and future pain and
suffering.

1. Future Pain and Suffering


 In light of appellant's concession that he has not contracted any
disease from appellee's possible use of infected needles on him, we
hold that appellant cannot logically recover damages for any future pain
and suffering.

2. Past Pain and Suffering


 Appellant pleaded physical injuries of "nausea, headaches,
dizziness, anxiety, pain and suffering." In his summary judgment
evidence, the only physical "pain and suffering" reported by appellant
was "just nerves. Felt like I was burning inside. Can't sleep." We hold
appellant has not presented evidence of any pain or suffering apart from
the mental anguish damages he pleaded. In light of our holding that
appellant cannot recover mental anguish damages for fear of a disease
he has not contracted, we hold that appellant cannot otherwise recover
damages for these symptoms by calling them "pain and suffering". 
Because appellant has not pleaded any physical symptoms apart from
those consistent with mental anguish, we hold he is not entitled to
recover damages for past pain and suffering.

3. Future Medical Expenses


 In light of appellant's concession that he has not contracted any
disease from appellee's possible use of infected needles on him, and our
holding that he cannot recover mental anguish damages for fear of a
disease he has not contracted, we hold that appellant cannot logically
recover damages for any future medical expenses.

4. Past Medical Expenses


 Appellees' motion for summary judgment did not address
appellant's claims for past medical expenses. Appellant pleaded these
damages and submitted summary judgment evidence that he
underwent additional medical testing with Dr. Samaniego to determine
whether he had contracted hepatitis C, hepatitis B, or HIV.

 We sustain sub-issue A as it relates to appellant's claim for past
medical expenses. The rest of sub-issue A is overruled.

L. Conclusion


 In Mafrige, the supreme court stated: "If the judgment grants
more relief than requested, it should be reversed and remanded, but not
dismissed." Mafrige, 866 S.W.2d at 592. Because the trial court's
order granted more relief than appellees requested, we reverse and
remand to the trial court: (1) appellant's claim for damages he allegedly
received as a result of appellees' failure "to exercise the standard [of]
care in regard to the way and method it responded to and informed
Plaintiff of the mistake that had occurred regarding the syringes in that
such method created shock, panic and hysteria," and (2) appellant's
claim for damages he allegedly incurred for past medical expenses due
to appellees' negligence. The remainder of the summary judgment is
affirmed.


 FEDERICO G. HINOJOSA

 Justice



Do not publish. Tex. R. App. P. 47.3.


Opinion delivered and filed this the

31st day of August, 2000.

1. Drury v. Baptist Mem. Hosp. Sys., 933 S.W.2d 668, 674-75 (Tex. App.--San
Antonio 1996, writ denied).
2. Appellant also sued Dr. Vadher, Rio Grande Regional Investments, Inc., and
Rio Grande Surgery Partners, Inc., but eventually dismissed his claims against these
defendants.
3. There is an apparent mistake in the numbering of appellant's amended
petitions. His "Third Amended Original Petition" was the live pleading at the time
appellees filed their first amended motion for summary judgment. The next pleading
filed by appellant is entitled "Fifth Amended Original Petition."